UNITED STATES of America,
Appellant,

v.

J. Milton RICH, Appellee.

No. 76–1621.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 24, 1978.

Decided Dec. 20, 1978.

Breitenstein, Circuit Judge, concurred in result and filed opinion.

McWilliams, Circuit Judge, concurred in part and dissented in part and filed opinion.

Calvin B. Kurimai, Crim. Div., Dept. of Justice, Washington, D. C. (Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, and Richard W. Beckler, Crim. Div., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Donn E. Cassity, of Romney, Nelson & Cassity, Salt Lake City, Utah (Kenneth R. Brown, Salt Lake City, Utah, on the brief), for appellee.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges.

Opinion on Rehearing

BARRETT, Circuit Judge.

The United States appeals from the May 25, 1976, order of the District Court dismissing the indictment brought against J. Milton Rich. The District Court ruled that trial could not proceed without (a) violating Rich's rights under the Double Jeopardy Clause of the Fifth Amendment, and (b) denying Rich his right to a speedy trial guaranteed by the Sixth Amendment and Fed.R.Crim.P. rule 48(b), 18 U.S.C.A. Our jurisdiction vests pursuant to 18 U.S.C.A. § 3731.

This appeal was first argued and submitted to this Court on September 26, 1977. However, in light of certain cases involving Double Jeopardy issues then pending review by the United States Supreme Court, we held this appeal in abeyance. The Supreme Court rendered decisions on the four Double Jeopardy cases on February 21, 1978, and June 14, 1978. Thereafter, the parties were requested to submit supplemental briefs and to re-argue this case. This was accomplished on October 24, 1978. A summary of the operative facts and circumstances should facilitate our disposition.

Rich was indicted for committing fraud on a bankruptcy trustee in violation of 18 U.S.C. § 152. His case was tried to a jury in July, 1975. Inasmuch as the jury was unable to reach a verdict, retrial was set for September 29, 1975. The Government thereafter sought and was granted a continuance. Rich did not object thereto. Trial was to be set at a future date. A few weeks later the Government sought a further continuance to December 1, 1975,

based on two simultaneously filed motions. The record does not reflect that Rich opposed the motions or that he demanded a speedy trial. In any event, the Government's motions were mooted when the case came up for call on the Court's December 1, 1975, docket.

When the case was called for trial on December 8, 1975, Rich was not present in the courtroom. Through counsel, however, Rich expressly waived his right to be present during the jury impaneling process. A jury was impaneled and sworn. Trial proceeded no further.

At some time after December 8, 1975, the trial court was advised that the Government's key attorney assigned to the case would be unable to reach Salt Lake City for the trial as scheduled. The Court thereupon temporarily excused the jury on December 17, 1975. Rich did not object to the additional delay.

From December 17, 1975 to February 2, 1976, neither the Government nor Rich made an effort to proceed with the trial. The uncontroverted and unchallenged affidavit of Donn E. Cassity, Rich's attorney, relates that the following then occurred: On February 2, 1976, Cassity was at the federal courthouse on a matter unrelated to this case; that in a corridor Cassity chanced to meet Chief Judge Ritter, who had at all times presided over the subject proceeding against Rich; that the Court requested that Cassity come to his chambers; that in his chambers the judge asked, "Cassity, you don't want to try that Rich case, do you?" to which Cassity replied, "No, judge, I don't want to try it. I believe the client is innocent and that the wrong persons were charged as defendants in this case."; that the judge immediately instructed his clerk to prepare an order discharging the jury; that Cassity said, "Judge, if you discharge the jury, I will raise any defense I can, including double jeopardy, as a defense against his being tried again."; and that the judge made no reply.

The Assistant United States Attorney swears by affidavit that his office was not notified that the jury was going to be discharged. That office first learned of the court's action in late April or early May, 1976, during a visit with the trial judge's law clerk. In the interim, neither the Government nor Rich did anything to cause the trial to be resumed.

At a hearing on May 25, 1976, convened on the Court's initiative, Rich moved for dismissal of the indictment on the following grounds: (1) that upon impaneling and swearing in a new jury to hear the case, Rich would be twice placed in jeopardy contrary to the Fifth Amendment, (2) that Rich had been denied his right to a speedy and public trial contrary to the Sixth Amendment, and (3) that Rich had been denied his right to a speedy and public trial contrary to Rule 48(b), *supra*. The trial court did not conduct an evidentiary hearing. The court dismissed the indictment by an order which recites the grounds which Rich relied upon when he filed his motion. The order does not specially state whether the court relied on all grounds advanced, or only one or two. We elect, accordingly, to treat the order as though the court relied on all three grounds advanced by Rich.

On appeal, the Government contends that the District Court's order dismissing the Rich indictment should be reversed in that: (1) the Double Jeopardy Clause does not bar the Government from trying Rich following the discharge of the impaneled jury, and (2) Rich was not denied his right to a speedy trial.

I.

The Government contends that the Double Jeopardy Clause of the Fifth Amendment does not bar it from trying Rich because (a) statements made by Rich's counsel to the trial judge in chambers brought about the discharge of the jury to which counsel for Rich then impliedly consented, and (b) Rich's counsel waived Rich's constitutional right not to be twice put in jeopardy by reason of his statements made to the trial judge in chambers which brought about the termination of the prosecution without a determination of factual guilt or innocence.

■ The general rule is that a criminal defendant is considered in jeopardy upon the impaneling and swearing of a jury. This rule is anchored to the recognition of a defendant's valued right to have his trial completed by a chosen tribunal. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *United States v. Fay*, 553 F.2d 1247 (10th Cir. 1977); *Foster v. United States*, 339 F.2d 188 (10th Cir. 1964); *McCarthy v. Zerbst*, 85 F.2d 640 (10th Cir. 1936), *cert. denied*, 299 U.S. 610, 57 S.Ct. 313, 81 L.Ed. 450 (1936). While the general rule is unambiguous and certain on its face, in application the rule has encountered various interpretive exceptions. This has come about by reason of refusal of courts to automatically apply the general rule in favor of a considered judgment whether a criminal defendant could be subjected to another trial before a new jury without impairing two primary interests which the Double Jeopardy Clause protects, the infringement upon which is not the result of any action or lack thereof attributable to the defendant.

The Supreme Court has identified these two important interests as (1) protecting a defendant from the unjust trauma, personal strain, financial hardship, embarrassment, and continuing anxiety of successive prosecutions, first articulated in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and (2) protecting a defendant from the overreaching arm of a trial judge who exercises his authority to aid the prosecution at a trial in which the Government's case is going badly by aborting the trial, thus affording the prosecution a more favorable opportunity to convict the accused. *See: Gori v. United States*, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

■ Thus, while the general rule and the important interests it seeks to protect are the focal point, the Supreme Court has pertinently observed that " . . . *the conclusions that jeopardy has attached begins, rather than, ends the inquiry whether the Double Jeopardy Clause bars retrial." Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973). (Emphasis supplied.) The general rule " . . . is by no means a mere technicality, nor is it a 'rigid, mechanical' rule. It is, of course, like most rules, an attempt to impart content to an abstraction." *Serfass v. United States, supra*, 420 U.S. at p. 391, 95 S.Ct. at p. 1064. The basic policy underlying the general rule is that " . . . the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States, supra*, 355 U.S. 187–188, 78 S.Ct. 223; *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

■ In the absence of prosecutorial bad faith or overreaching, or bad faith conduct exercised by the judge, it has long been held that a trial court's grant of a motion for mistrial renders a subsequent plea of former jeopardy ineffective if the mistrial is dictated by "manifest necessity" and meets "the ends of public justice." This is so even in those cases where a defendant does not request, consent to or acquiesce in the granting of a mistrial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824) (manifest necessity to order discharge of jury to meet the ends of public justice); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (declaration of mistrial properly based on trial judge's assessment of the prejudicial impact of defense counsel's opening statement); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) (a court-martial proceeding properly terminated because of military necessity); *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (determination of possible juror bias necessitating grant of mistrial); *United States v. Appawoo*, 553 F.2d 1242 (10th Cir. 1977) (upholding retrial on basis that trial court's grant of motions to dismiss, even though designated an "acquittal" in

the Court's order, was premised solely on erroneous constitutional grounds interpretive of the statute under which the defendant had been charged and not upon any facts adduced at trial).

Decisions holding that granting of mistrial motions resulted in double jeopardy include *United States v. Jorn, supra*, and *United States v. Fay*, 553 F.2d 1247 (10th Cir. 1977). In *Fay*, despite the fact that the trial judge failed to conform with the rule directing that motions to suppress be heard and disposed of prior to trial, jeopardy nevertheless attached upon grant of motion for acquittal during trial to jury inasmuch as the Government failed to present evidence supporting the basic conspiracy charge.

*Appawoo, supra*, recognized that if a judgment of acquittal is based on the insufficiency of the evidence, as in *Fay, supra*, jeopardy does attach in conformity with Fed.R.Crim.P., rule 29(a), 18 U.S.C.A. We there stated in part:

> We have given careful consideration to *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642, wherein the Court considered the application of the double jeopardy clause to judgment of acquittal . . . as indicated in *United States v. Martin Linen Supply Co.*, neither the form of the order entered by the trial judge nor the terminology used is determinative. Thus neither the form of the order nor its recitation that it is an "acquittal" is controlling . . . form does not control . . . 'we must determine whether the ruling of the judge, whatever its label, actually represented a resolution, correct or not, of some or all of the actual elements of the offense charged.'

553 F.2d at p. 1244.

In *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), the Court said:

> At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country. Instead, without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws. (Footnotes omitted.)

434 U.S. at p. 509, 98 S.Ct. at p. 832.

In *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), the Court held that when a defendant requests a mistrial he exercises his choice to terminate the trial and the Double Jeopardy Clause does not bar reprosecution "*absent provocative or bad-faith conduct by the judge or prosecutor,*" quoting from *United States v. Jorn, supra*. The *Lee* Court observed, just as our Court did in *Appawoo, supra*, that the trial judge's terminology in entering an order based on a double jeopardy motion is not determinative:

> The distinction drawn by *Jenkins* [*United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975)] does not turn on whether the District Court labels its action a "dismissal" or a "declaration of mistrial." The critical question is whether the order contemplates an end to all prosecution of the defendant for the offense charged. A mistrial ruling invariably rests on grounds consistent with reprosecution, see *United States v. Jorn*, 400 U.S. 470, 476 [91 S.Ct. 547, 27 L.Ed.2d 543] (1971) (plurality opinion), while a dismissal may or may not do so. Where a midtrial dismissal is granted on the ground, correct or not, that the defendant simply cannot be convicted of the offense charged, *Jenkins* establishes that further prosecution is barred by the Double Jeopardy Clause.

432 U.S. at p. 30, 97 S.Ct. at p. 2146.

In the instant case, the jury was empaneled and sworn to hear the case and thereafter discharged *without any reason given*

*by the trial court in the order or otherwise.* The discharge occurred before opening statements were made and any evidence presented. Rich was obviously *not* subjected to the embarrassment, expense and ordeal compelling him to live in a continuing state of anxiety and insecurity referred to in *Green v. United States, supra,* at the time the trial judge dismissed the jury. Thus, the interest of protecting Rich from the traumatic experience of a second trial and the attendant financial hardship is not a proper concern. The second interest identified by the Supreme Court, i. e., that of affording the defendant the right to have the chosen jury *which has heard the case* decide the issue of the verdict, is not present here. Rich could be retried without impairing these important interests.

There is lacking here that "embarrassment, expense and ordeal" usually attendant upon a criminal trial. There can be little doubt that Rich has been under a great deal of stress. He has endured one trial in which the jury was unable to resolve the issue of guilt. Even so, it cannot be reasonably suggested that the impaneling and swearing in of the jury on December 8, 1975 heightened whatever strain Rich was then under. Nothing in the record reflects that the December 8 proceedings put Rich to any expense. Furthermore, the jury had not seen Rich, had heard no evidence against him and had not heard the prosecutor's opening statement. In short, the Government had not in anywise revealed its case against Rich. The jurors had not been armed with unsubstantiated accusations with which they might poison the community against Rich. Rich has not been "embarrassed" by the December 8 proceedings in any meaningful sense.

The impaneling process alone might, in some circumstances, exact an emotional toll from a criminal defendant. But this is not such a case. Rich was not present during the December 8 proceedings. He was not compelled by his anxieties to assume a "respectable" appearance before the veniremen. He was not tormented in obsessive speculation as to which of the veniremen would believe him and which would not. He did not view the sometimes delicate, sometimes combative process of challenging prospective members of the jury. If, following the December 8 proceedings, Rich lived in "a continuing state of anxiety and insecurity," he bears much of the responsibility therefor. He made little attempt to conclude the trial one way or the other. He did not request the Government to resume the trial. It was not until the court ordered a hearing on its own initiative that he moved to terminate the proceedings.

There is no suggestion that either the prosecutor or the trial court aborted the trial because of fear that the jury might acquit Rich. Indeed, the jury had no chance to form opinions. A fair and impartial group of jurors had merely been sworn, then temporarily excused, then dismissed. Nevertheless, we must hold that Rich cannot be tried again.

In *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), the Court said, *inter alia* :

> Although it has thus long been established that jeopardy may attach in a criminal trial that ends inconclusively, the precise point at which jeopardy does attach in a jury trial might have been open to argument before this Court's decision in *Downum v. United States,* 372 U.S. 734 [83 S.Ct. 1033, 10 L.Ed.2d 100]. *There the Court held that the Double Jeopardy Clause prevented a second prosecution of a defendant whose first trial had ended just after the jury had been sworn and before any testimony had been taken.* The Court thus necessarily pinpointed the stage in a jury trial that jeopardy attaches, and the *Downum* case has since been understood as explicit authority for the proposition that jeopardy attaches when the jury is empaneled and sworn. See *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569 [97 S.Ct. 1349, 51 L.Ed.2d 642]; *Serfass v. United States,* 420 U.S. 377, 388 [95 S.Ct. 1055, 43 L.Ed.2d 265].
>
> *The reason for holding that jeopardy attaches when the jury is empaneled and*

*sworn lies in the need to protect the interest of an accused in retaining a chosen jury.* That interest was described in *Wade v. Hunter, supra,* as a defendant's "valued right to have his trial completed by a particular tribunal." 336 U.S., at 689 [69 S.Ct. 834]. It is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice. Throughout that history there ran a strong tradition that once banded together a jury should not be discharged until it had completed its solemn task of announcing a verdict.

Regardless of its historic origin, however, the defendant's "valued right to have his trial completed by a particular tribunal" is now within the protection of the constitutional guarantee against double jeopardy, since it is that "right" that lies at the foundation of the federal rule that jeopardy attaches when the jury is empaneled and sworn. *United States v. Martin Linen Supply Co., supra; Serfass v. United States,* 420 U.S. 377 388 [95 S.Ct. 1055, 43 L.Ed.2d 265]; *Illinois v. Somerville,* 410 U.S. 458, 467 [93 S.Ct. 1066, 35 L.Ed.2d 425]; *United States v. Jorn,* 400 U.S. 478–480, 484–485 [91 S.Ct. 547] (plurality opinion).

\* \* \* \* \* \*

But the federal rule as to when jeopardy attaches in a jury trial is not only a settled part of federal constitutional law. It is a rule that both reflects and protects the defendant's interest in retaining a chosen jury. We cannot hold that this rule, so grounded, is only at the periphery of double jeopardy concerns. Those concerns—the finality of judgments, the minimization of harassing exposure to the harrowing experience of a criminal trial, and the valued right to continue with the chosen jury—have combined to produce the federal law that in a jury trial jeopardy attaches when the jury is empaneled and sworn. (Emphasis supplied. Footnotes omitted.)

437 U.S. at pp. 35–38, 98 S.Ct. at pp. 2160–2162, 57 L.Ed.2d at pp. 31–33.

In *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Court said:

The Government's real quarrel is with the judgment of acquittal. While the numbers evidence was erroneously excluded, the judgment of acquittal produced thereby is final and unreviewable. Neither 18 U.S.C. § 3731 nor the Double Jeopardy Clause permit the Government to obtain relief from all of the adverse rulings—most of which result from defense motions—that lead to the termination of a criminal trial in the defendant's favor. See *United States v. Wilson, supra,* 420 U.S. [332], at 351–352 [95 S.Ct. 1013, 43 L.Ed.2d 232]; S.Rep. No. 91–1296, p. 2 (1970). To hold that a defendant waives his double jeopardy protection whenever a trial court error in his favor on a midtrial motion leads to an acquittal would undercut the adversarial assumption in which our system of criminal justice rests, see *Jeffers v. United States, supra,* 432 U.S. [137], at 159–160 [97 S.Ct. 2207, 53 L.Ed.2d 168] (Stevens, J., dissenting in part and concurring in the judgment in part), and would vitiate one of the fundamental rights established by the Fifth Amendment.

The trial court's rulings here led to an erroneous resolution in the defendant's favor on the merits of the charge. As *Fong Foo v. United States, supra* [369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629], makes clear, the Double Jeopardy Clause absolutely bars a second trial in such circumstances. The Court of Appeals thus lacked jurisdiction of the Government's appeal.

437 U.S. at pp. 77–78, 98 S.Ct. at p. 2186, 57 L.Ed.2d at pp. 62, 63.

The foregoing detailed review discloses, in summary, that jeopardy attaches in a criminal trial when the jury is empaneled and sworn and that the Double Jeopardy Clause prevents a subsequent prosecution of a defendant whose previous trial has ended with the discharge of the jury before it has rendered a verdict, unless: (1) findings of "manifest necessity" justifying the

trial court's discharge of the first jury appear by express declaration of the court, regardless of the terminology of the order or are apparent from the trial court record, or (2) the defendant consents to the trial court's order discharging the jury upon either the Government's or the trial court's motion, or waives the right to later object thereto.

■ No contention is made that the record before us justified the trial court's *sua sponte* discharge of the jury under the "mistrial" heading. This necessarily follows inasmuch as nothing in the record evidences the cause, reason, or justification—if any there be—for the trial judge's unilateral action in directing the entry of the order discharging the Rich jury. Any attempt to justify the trial court's order must necessarily be predicated on guess and conjecture. The record is barren of any showing of "manifest necessity" justifying the discharge of the Rich jury. Resumption of trial in this case could not have diminished Rich's protected interest to be spared unjust stress associated with repeated trials, and to be free of misconduct from biased trial judges and prosecutors. Thus, the district court's order dismissing the Rich jury constituted a clear abuse of discretion affecting the public's substantial right to have a criminal defendant brought to trial. The court dismissed the jury without notice to one party, and at the instance of neither party without stating a reason therefor. The trial court's unilateral action creating this miscarriage of justice cannot be said to have been taken in good faith.

We hold that Rich's attorney did not consent, expressly or impliedly, to the trial court's spontaneous, unilateral action in ordering the discharge of the jury. Further, we hold that Rich's attorney was not empowered or authorized to waive Rich's fundamental constitutional right to be tried by the chosen panel because Rich had no knowledge or information concerning the in-chamber proceeding leading to the trial court's order.

We do not accept the Government's contention that the remarks and statements made by Rich's counsel in response to inquiries made of him in the totally unexpected in-chamber conference preceding the entry of the order discharging the jury can be construed as counsel's expression of desire to terminate the prosecution. In our view, the remarks made by Rich's counsel are clearly indicative of his belief in the innocence of his client, consistent with his long association with Rich's defense and his insistence upon trial by jury. It would be difficult, we believe, to envision a clearer statement of intent on behalf of one's client inconsistent with the trial judge's *sua sponte* discharge of the jury than the Cassity utterance to the judge: "Judge, if you discharge the jury, I will raise any defense I can, including double jeopardy as a defense against his being tried again."

■ We further hold that Rich's attorney was not empowered or authorized, expressly or impliedly, to waive Rich's right to be tried by the chosen jury. Rich was constitutionally entitled to have his cause tried to the jury empaneled in that he had a "valued right to have his trial completed by that particular tribunal." *Wade v. Hunter, supra*; *Crist v. Bretz, supra*; *Sanabria v. United States, supra*. Inasmuch as this right is anchored to the United States Constitution, it cannot be waived by one other then the accused. Courts indulge every reasonable presumption against waiver of a fundamental constitutional right. In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937), the Supreme Court stated that waiver is ordinarily an intentional relinquishment or abandonment of a known constitutional right or privilege and the courts look to the background, experience and conduct *of the accused* in determining the matter of waiver. In *Smith v. United States*, 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949), the court held that waiver of the privilege against self-incrimination cannot be lightly inferred. *See also:* 16 Am. Jur.2d, Constitutional Law, § 131.

This court, in *Cox v. State of Kansas*, 456 F.2d 1279 (10th Cir. 1972), held that a defendant could not be held to have waived his constitutional right not to be twice

placed in jeopardy for the same offense unless he did so knowingly and intelligently. And in *Caballero v. Hudspeth,* 114 F.2d 545 (10th Cir. 1940), we identified the right not to be placed in jeopardy twice for the same offense as a personal right which could be waived by the accused by an intelligent, knowledgeable plea of guilty.

We hold that neither Rich nor his counsel consented to the trial court's entry of the order of discharge of the jury and that the record is barren of any justifiable cause for the discharge order. Under these circumstances, the Double Jeopardy Clause bars reprosecution of Rich.

## II.

▉ Rich argues that he was denied his right to a speedy trial contrary to the Sixth Amendment. In evaluating this contention we must consider the four factors articulated by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

▉ The delay in this case was somewhat more than nine months, including more than four months from the end of the first trial to the commencement of the second, and more than five months following the temporary excuse of the jury. Unless the delay is "presumptively prejudicial," we need not examine the other three factors enunciated in *Barker. Barker v. Wingo, supra,* at 530, 92 S.Ct. 2182. While recognizing that the length of delay that will trigger such an examination depends upon the circumstances of each case (*Barker v. Wingo, supra,* at 530, 531, 92 S.Ct. 2182), we note that delays longer than that involved here have been held not to constitute Sixth Amendment violations. See *United States v. Mackay,* 491 F.2d 616 (10th Cir. 1973), *cert. denied,* 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974), 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974) (18 months); *United States v. Goeltz,* 513 F.2d 193 (10th Cir. 1975), *cert. denied,* 423 U.S. 830, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975) (17 months);

*United States v. Redmond,* 546 F.2d 1386 (10th Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978) (11 months); *United States v. Bettenhausen,* 499 F.2d 1223 (10th Cir. 1974) (10 months). On the other hand, the delay in this case was brought about after the Government had already tried Rich once and, to a significant extent, after it had undertaken proceedings to try him a second time.

We need not decide whether the delay is "presumptively prejudicial," because Rich clearly has not made a strong showing on the other three factors. Rich at no time asserted his right to a speedy trial. He has not established the elements of prejudice identified in *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182. There is no record that Rich was incarcerated during the delay or that he was otherwise depressed. At the May 25, 1976 hearing, counsel for Rich declared in a conclusory fashion that his client had been prejudiced due to the witnesses' fading memories and the difficulty of keeping track of witnesses. This claim has in no manner been substantiated.

We do indeed believe that the greater part of the delay here can be traced to Government requests. The Government sought and was granted a continuance on October 15, 1975, because one of its witnesses was on a two week hunting trip. On December 17, 1975, the court temporarily excused the jury because the Government attorney assigned to the case claimed that he could not reach Salt Lake City in time for trial as a result of an airline strike. The Government has not explained why it did nothing during the following five months to cause the trial to resume. The trial court might well have conducted an evidentiary hearing on this point. Instead, the court called the May 25, 1976 hearing without advising the Government that the Sixth Amendment issue was the subject of the hearing! At the hearing the trial court cut Government counsel off in midsentence as counsel began to discuss the *Barker* opinion. Finally, the trial court refused to allow the Government to submit a brief on the speedy trial issue.

We hold that the district court erred in concluding that Rich was denied his right to a speedy trial under the Sixth Amendment.

### III.

The district court also concluded that Rich was denied a speedy trial contrary to Fed.R.Crim.P., rule 48(b), *supra.* The term "speedy trial" invokes the four factor balancing test set forth in *Barker v. Wingo, supra.* As heretofore discussed, Rich has not been denied a speedy trial. Even so, Rich argues that a trial court's discretion to dismiss an indictment under Rule 48(b) for unnecessary delay is not circumscribed by the Sixth Amendment.

Rich accurately states the law. *See United States v. Stoker,* 522 F.2d 576, 580 (10th Cir. 1975). The breadth of a trial judge's discretion under Rule 48(b) is indicated by the text itself:

> . . . if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

However, the trial court in the instant case did not conclude that the United States had been guilty of "unnecessary delay." Nor did the court take evidence and render findings from which we could pass judgment on review. The "better practice" would have been for the trial judge to conduct an evidentiary hearing on the 48(b) motion and to have made findings in ruling on the motion. *United States v. Strunk,* 467 F.2d 969 (7th Cir. 1972), *rev'd on other grounds,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1972).

The district court's conclusion that Rich was denied a speedy trial does not imply a finding that the Government failed to prosecute the case diligently. The justification for a delay in prosecution is but one of four factors to be weighed in evaluating whether a defendant has been denied a speedy trial. *Barker v. Wingo, supra.* The record is barren of findings indicating that the trial court considered all four factors, much less the weight given to each. We thus cannot conclude, by rank conjecture, that the Government was guilty of such unnecessary delay as would support the trial court's dismissal of the indictment under Rule 48(b).

In light of the controlling aspect of the Double Jeopardy contention we hold that the United States is barred from trying Rich for the same offense charged in the indictment presented to the jury which was improperly discharged by the trial court after having been duly empaneled and sworn.

BREITENSTEIN, Circuit Judge, concurring in the result.

I concur in the result reached by Judge Barrett. In my opinion the defendant's attorney did not consent to the dismissal of the jury and did not waive his client's constitutional right to plead double jeopardy. The action of the trial judge in discharging the jury was an abuse of discretion. In *Jorn v. United States,* 400 U.S. 470, 486–487, 91 S.Ct. 547, 27 L.Ed.2d 543, the court held that abuse of discretion in granting a mistrial did not foreclose a subsequent double jeopardy plea. I believe that *Jorn* mandates application of double jeopardy in the case before us.

The action was not subject to dismissal for violation of the speedy trial act. The court made no effort to apply the balancing test which we have repeatedly held to be necessary. *United States v. Stoddart,* 10 Cir., 574 F.2d 1050, 1054.

McWILLIAMS, Circuit Judge, concurring in part and dissenting in part:

I agree that the indictment was not subject to dismissal for violation of the speedy trial act. I do not agree, however, that a double jeopardy plea has application to the highly unusual factual situation with which we are here confronted. See *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).