**Gwendolyn Kathy WATKINS,
Petitioner–Appellant,**

v.

**Betty KASSULKE, Warden, Kentucky Correctional Institution for Women, Pewee Valley, Kentucky, Respondent–Appellee.**

No. 95–5520.

United States Court of Appeals,
Sixth Circuit.

Argued March 4, 1996.

Decided July 18, 1996.

Marguerite Neill Thomas, Asst. Public Advocate (argued and briefed), Department of Public Advocacy, Frankfort, KY, for Petitioner-Appellant.

Laura Early (briefed), Cindy Goldhill Schwartz (argued), Office of the Attorney General, Frankfort, KY, for Respondent-Appellee.

Before: NORRIS, SILER, and GODBOLD *, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Gwendolyn Watkins, a prisoner in the Kentucky penal system, appeals the district court's denial of her habeas corpus petition filed pursuant to 28 U.S.C. § 2254. We agree with the district court that the consent of Watkins's counsel to a mistrial disposes of her double jeopardy argument and the related claim of ineffective assistance of counsel. Accordingly, we affirm the denial of habeas relief.

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## I. Facts

A Kentucky grand jury indicted Watkins in May of 1988 on three felony counts involving theft, bail-jumping, and repeat felony offender status. On February 8, 1989, Watkins' trial began. Following a hearing on pretrial motions, a jury of twelve was seated and sworn. As the judge dismissed the remainder of the juror pool, one of the seated jurors, Sheila White, informed the bailiff that she had a medical appointment scheduled for that afternoon. The judge asked the unselected jurors to return to the courtroom, at which point the following side-bar discussion occurred between the judge, the juror, prosecutor Joe Bouvier, and defense counsel Kathy Stein:

JUDGE: Uh, is it a doctor's appointment that you could do another time?

JUROR: Well see, I got hit and I have to have my leg checked before I can finish filling out my insurance papers.

JUDGE: You got hit in an automobile accident?

JUROR: I was hit by an automobile, yes.

JUDGE: If you'll have a seat back there, I'll need to talk to the attorneys. What's your number?

JUROR: 29.

JUDGE: Okay.

BOUVIER: May I see the records (inaudible) jurors?

STEIN: (inaudible)

JUDGE: Uh, it's obvious to the court that this juror would have to go ahead and complete the appointment that she's got and I'm gonna have to excuse her. This means that we'll have to, uh, go through the process of picking another juror. I think that, uh, I would, uh, the rules don't cover this situation, and what I propose to do, if it's agreeable with the Commonwealth and the defense is to call four jurors from the panel and, uh, give the defense two

strikes and the commonwealth, one strike.

STEIN: That's acceptable.

JUDGE: Is that all right, Joe?

BOUVIER: Yes.

The court proceeded to dismiss White and to inform the remaining members of the jury pool of the procedure for replacing White. The court then asked whether any other jurors had problems that would prevent them from serving. At that point, another of the empaneled and sworn jurors, Doug Mayberry, informed the court that he had slept for only an hour and forty-five minutes the preceding evening. This revelation prompted the following side-bar discussion between the judge and the attorneys:

STEIN: Your Honor, I left out of my voir dire questions about does anybody have anything that would prevent them from . . .

JUDGE: Yeah, I've never had this problem before. But uh, I sus, I think we're gonna have to dismiss this one if you all don't have any objections.

STEIN: Yeah, if, if he's . . .

JUDGE: If he's not going to be able to . . .

STEIN: Right.

JUDGE: Able to listen to it.

STEIN: What's his . . .

JUDGE: So then, let's see we'll draw, uh, let's see I can draw six jurors, seven jurors and give Kathy three strikes and the commonwealth two strikes, if that's agreeable.

STEIN: That's agreeable.

BOUVIER: Sure.

The court then dismissed Mayberry and filled the remaining seat. The new panel, comprising ten members of the first sworn jury and the two replacement jurors, was sworn; and the trial proceeded. The jury returned a verdict of guilty on the felony bail-jumping and persistent felon counts but found that the prosecution had proved only misdemeanor theft, not the felony theft charged in the indictment. In March of 1989, Watkins received a sentence of ten years' imprisonment.

The Kentucky Court of Appeals affirmed the conviction in April of 1990, and the Kentucky Supreme Court denied discretionary review. In August of 1991, Watkins began her state post-conviction proceedings by filing a motion with the trial court to vacate its judgment on the basis of double jeopardy and ineffective assistance of counsel. According to Watkins, the dismissal of the two sworn jurors amounted to a de facto mistrial that was the product of neither "manifest necessity" nor consent by Watkins. She argued that because jeopardy attached when her first jury was seated and sworn, the de facto mistrial precluded further efforts to prosecute her for the offenses charged in the indictment. As a corollary, she argued that her attorney's failure to object to the resumption of the trial on the basis of the Double Jeopardy Clause constituted ineffective assistance.

The trial court held an evidentiary hearing, and Watkins' trial attorney testified that she had consented to the dismissal of jurors White and Mayberry as a matter of trial strategy. She stated that she had planned to present a complicated defense that would require an attentive jury and that she did not want jurors who would be either preoccupied with a missed doctor's appointment or too tired to follow her arguments. In October of 1991, the trial court held that jeopardy had not attached until the swearing of the final jury panel, as the seating of the two final jurors was merely an extension of the original selection process. The court also credited the testimony of Watkins' attorney as to the reasons for her decision to allow the dismissal of the two jurors. The Kentucky Court of Appeals affirmed the denial of the motion to vacate in June of 1992, adopting the opinion of the trial court as its own; and the Kentucky Supreme Court denied discretionary review.

Watkins then sought federal habeas relief in April of 1994. In March of 1995, the district court denied her petition, holding that although jeopardy had attached when the original jury panel was seated and sworn, the consent of Watkins' attorney to the dis-

missal of jurors White and Mayberry as a matter of trial strategy constituted consent to the de facto mistrial that was binding on Watkins. Consequently, the district court reasoned, the Double Jeopardy Clause posed no bar to the subsequent trial and conviction of Watkins. The district court also rejected the ineffective assistance of counsel argument, finding that Watkins' attorney had acted reasonably. This appeal followed.

## II. Double Jeopardy

■ We review the district court's double jeopardy ruling de novo. *United States v. WRW Corp.*, 986 F.2d 138, 140 (6th Cir. 1993). The analytic framework is simple enough. Jeopardy attaches when the original panel is seated and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury, excluding any contemporaneously empaneled and sworn alternates, is barred unless (1) there is a "manifest necessity" for a mistrial or (2) the defendant either requests or consents to a mistrial. *United States v. Dinitz*, 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *United States v. Cameron*, 953 F.2d 240, 243 (6th Cir.1992).

■ While the trial court did not formally declare a mistrial, we agree with the parties that what occurred in Watkins' trial should be treated as a mistrial for purposes of analyzing the double jeopardy question. The original jury did not hear the case through to a verdict, and this fact is the defining characteristic of a mistrial. The government does not argue that there was "manifest necessity" for the mistrial, and the record demonstrates that no mistrial was requested. The issue, then, is whether Watkins consented to the impromptu juror replacement procedure.

The thrust of Watkins' appeal is that her rights to trial by her chosen jury and to freedom from successive prosecutions are "personal" and, therefore, cannot be waived by counsel unless Watkins knowingly, intelligently, and voluntarily authorizes counsel to waive those rights. *Cf. Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983) (recognizing that criminal

defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal"). Watkins bases this argument primarily on two cases.

The first opinion is *United States v. Rich*, 589 F.2d 1025 (10th Cir.1978), where the Court of Appeals for the Tenth Circuit announced that an attorney lacks authority to waive double jeopardy rights on behalf of a client absent an intentional relinquishment of those rights by the defendant. "Inasmuch as this right is anchored to the United States Constitution, it cannot be waived by one other [than] the accused." *Id.* at 1032. Watkins argues that this circuit should follow that approach to constitutional rights.

This language from *Rich* is unpersuasive for a number of reasons. As an initial matter, it is plainly dictum. The key facts in *Rich* were that in an unplanned and informal discussion at the courthouse, the trial judge announced to defense counsel his intention to grant a sua sponte discharge of the jury. Defense counsel responded by protesting vigorously and declaring that he would raise any available objections, specifically mentioning double jeopardy. *Id.* The discussion of counsel's authority to waive a client's rights was wholly gratuitous, since counsel did not waive any of his client's rights.

Moreover, a blanket statement that counsel may not waive a defendant's constitutional rights absent an informed, conscious choice on the part of the defendant is overly broad. This circuit has recognized that a defendant's right to object to the admission of hearsay evidence, a right that is grounded in the Confrontation Clause of the Sixth Amendment, *United States v. Canan*, 48 F.3d 954, 961 (6th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996), can be waived by the failure of counsel to make a timely objection. *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.), *cert. denied*, 506 U.S. 940, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992). Similarly, the failure of counsel to object in a timely manner to the admission of evidence obtained in violation of the Fourth Amendment waives

the right to have that evidence suppressed. *United States v. Obiukwu,* 17 F.3d 816, 819 (6th Cir.1994).

The second of the decisions relied upon by Watkins is *Dinitz,* from which Watkins draws the following statement concerning errors that may warrant a mistrial: "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." 424 U.S. at 609, 96 S.Ct. at 1080. Watkins argues that she was unaware of the content of the side-bar discussions that resulted in the dismissal of the two sworn jurors and that she did not, therefore, retain "primary control" over the decision to pursue a mistrial. According to Watkins, *Dinitz* demonstrates that only she, and not her attorney, can make the decision to allow substitution of jurors.

This reading of *Dinitz,* which is premised on a single sentence viewed in isolation, ignores the factual context of that case. The Court was addressing "[t]he distinction between mistrials declared by the court sua sponte and mistrials granted at the defendant's request or with his consent," *id.* at 608, 96 S.Ct. at 1080, leading to the conclusion that while reprosecution is permitted in the former case only where there is "manifest necessity," no such restriction on reprosecution exists in the latter setting. There was no development whatsoever of a distinction between consent to mistrial by a defendant and consent by counsel.

In fact, the Court disagreed with the very argument pressed by Watkins:

> The respondent characterizes a defendant's mistrial motion as a waiver of "his right not to be placed twice in jeopardy" and argues that to be valid the waiver must meet the knowing, intelligent, and voluntary standard.... This approach erroneously treats the defendant's interest in going forward before the first jury as a constitutional right comparable to the right to counsel. It fails to recognize that the protection against the burden of multiple prosecutions underlying the constitutional prohibition against double jeopardy may be served by a mistrial declaration and the

concomitant relinquishment of the opportunity to obtain a verdict from the first jury. *Id.* at 609 n. 11, 96 S.Ct. at 1080 n. 11. As the Court recognized, it may well be in a defendant's interest to end a tainted proceeding at an early stage, thereby avoiding the risk of having to finance and to endure two full trials in the event that the court finds "manifest necessity" for a mistrial at some later point in the initial proceeding.

Ultimately, the question of whether a waiver of double jeopardy rights by counsel binds a criminal defendant depends on whether such a decision involves "personal rights" as opposed to trial strategy. While decisions implicating personal rights, such as the right to plead guilty or to appeal, may require some degree of input by a defendant, *see Jones,* 463 U.S. at 751, 103 S.Ct. at 3312–13, choices by counsel that reflect trial strategy, such as whether to object to the introduction of evidence, will bind a defendant unless the defendant promptly indicates disagreement with counsel's decision. As the Supreme Court has noted, "default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim." *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986).

While this court has not yet classified a request for, or a consent to, a mistrial as an issue of personal rights versus trial strategy, at least one other court of appeals has shed some light on the matter. In *Galowski v. Murphy,* 891 F.2d 629 (7th Cir.1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990), the court stated that "[t]he decision whether to move for a mistrial or instead to proceed to judgment with the expectation that the client will be acquitted is one of trial strategy." *Id.* at 639. *See also Armstrong v. United States,* 367 F.2d 821, 821 (7th Cir.1966) ("[T]he motion for mistrial, made by his counsel, was a matter of trial procedure ordinarily entrusted to counsel, and petitioner is bound by his counsel's choice in the absence of express objection...."). While *Galowski* involves a claim that the failure to request a mistrial amount-

ed to ineffective assistance of counsel, the linking of counsel's handling of mistrial issues to trial strategy is instructive.

As with rules of evidence, one would not expect or require a criminal defendant to be versed in rules of procedure. While it makes sense to consult a defendant on certain basic choices, such as how to plead or whether to appeal, it is far less likely that a defendant would have a strong opinion with respect to proceeding with an initial jury as opposed to eradicating a potentially prejudicial trial taint. As a rough rule of thumb, when the decision to assert or to waive a right depends upon a time-sensitive assessment of a defendant's litigation position, a calculation that must ordinarily be made rapidly and in the heat of trial without any meaningful opportunity for consultation between counsel and a defendant, that decision is a matter of trial strategy.

■ That is ordinarily the case with the decision to request or to consent to a mistrial. When faced with a trial occurrence that may be prejudicial to the defense, counsel must make some tough choices. Remaining silent, objecting, requesting a curative instruction, moving for a mistrial—each may be a valid course of action, and the path ultimately chosen is best entrusted to the experience of counsel. We hold that where, as here, defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, regardless of whether the defendant participates in the decision.

■ Because the record clearly demonstrates that Watkins' trial counsel consented to the dismissal of jurors White and Mayberry and that Watkins did not personally object to this de facto mistrial, the replacement of those jurors and the subsequent trial did not violate Watkins' double jeopardy rights.

### III. Ineffective Assistance of Counsel

■ We review the district court's decision on ineffective assistance of counsel de novo. *Glenn v. Tate,* 71 F.3d 1204, 1206 (6th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3839 (U.S. May 28, 1996) (No. 95–1969). Watkins' argument that her trial counsel's

performance was so deficient as to violate the standard of *Strickland v. Washington,* 466 U.S. 668, 690–94, 104 S.Ct. 2052, 2066–68, 80 L.Ed.2d 674 (1984), rests entirely on the claim that there should have been a double jeopardy objection as soon as the trial court dismissed the two sworn jurors. This claim ignores the fact that trial counsel participated in the decision to dismiss those jurors. What a competent attorney should have done if the trial court had sua sponte dismissed the jurors, so that the loss of the first jury was a fait accompli, is immaterial to this case. Far from failing to make an obvious and dispositive objection, Watkins' counsel chose for sound strategic reasons to permit the replacement of the two jurors.

Watkins was not denied effective assistance of counsel.

### IV. Conclusion

The judgment of the district court, denying the habeas corpus petition of Gwendolyn Watkins, is **affirmed.**