UNITED STATES of America,
Plaintiff-Appellee,

v.

Ray C. BROCE and Broce Construction
Company, Inc., Defendants-Appellants.

Nos. 83–2558, 83–2559.

United States Court of Appeals,
Tenth Circuit.

Jan. 9, 1985.

John P. Fonte, Dept. of Justice, Washington, D.C. (John J. Powers, III, Dept. of Justice; J. Paul McGrath, Asst. Atty. Gen., Charles F. Rule, Deputy Asst. Atty. Gen., Washington, D.C.; Judy Whalley, Mary Jones, Dept. of Justice, Chicago, Ill., with him on brief), for plaintiff-appellee.

Glenn E. Casebeer, II, Coffeyville, Kan. (Curt T. Schneider, Coffeyville, Kan., with

him on brief), of Schneider & Casebeer, Coffeyville, Kan., for defendants-appellants.

Before SETH and DOYLE, Circuit Judges, and BOHANON, Senior District Judge.*

BOHANON, District Judge.

Broce Construction Co. and Ray C. Broce (hereinafter "defendants") appeal from an order of the United States District Court for the District of Kansas denying their motion to vacate the judgment and sentence entered by that court March 15, 1981, in one of the two cases combined here on appeal. Defendants claim that the judgment and sentence in question are in violation of the Double Jeopardy Clause of the United States Constitution. The district court, without making a finding as to whether the two sentences did in fact violate the Double Jeopardy Clause, found that defendants had waived their rights to raise that issue by pleading guilty to the indictment supporting the judgment and sentence challenged. The central issue on appeal is whether the trial court's finding of waiver was erroneous.

Defendants were indicted by a grand jury in Case No. 83–2559 (No. 81–20119–01 below) on November 17, 1981. That indictment charged, in Count I, violations of the Sherman Act, 15 U.S.C. § 1 (1976), and, in Count II, violation of the mail fraud statute, 18 U.S.C. § 1341 (1976), in connection with a conspiracy to rig bids submitted to the State of Kansas on a particular highway construction job, designated by the State as Project No. 23–60–RS–1080(9) and let for bidding on April 25, 1978. The mail fraud count of this indictment is not involved in this appeal and will not be discussed further.

On February 4, 1982, the same grand jury returned a second indictment against defendants in Case No. 83–2558 (No. 82–20011–01 below) charging violation of the Sherman Act in connection with a conspir-acy to rig bids on yet another Kansas highway construction job, designated Project No. KRL 29–2(26) and let by the State on July 17, 1979. Threatened by government prosecutors with a series of further indictments for each highway project believed to have been rigged, defendants accepted a plea bargain wherein they agreed to plead guilty to two indictments charging conspiracy to violate the Sherman Act in exchange for the government's promise not to prosecute them "for or on account of any collusion between defendant[s] and other contractors regarding any other highway, street or airport runway construction projects let by awarding authorities within the States of Kansas and Oklahoma prior to the date" of the plea bargain. (ROA at 150).

Accordingly, on February 8, 1982, defendants entered pleas of guilty to both pending indictments. At that time, Mr. Broce, appearing both on his own behalf and on behalf of the corporation, was advised of and waived both defendants' rights to be represented by separate counsel, to have a speedy and public trial by a jury, to cross-examine all opposing witnesses, to utilize compulsory process, to be free from compelled self-incrimination, and to be presumed innocent until the government established guilt by competent evidence to the satisfaction of the judge or jury beyond a reasonable doubt. The record of these proceedings does not disclose, however, that Mr. Broce was at any time advised of his and the defendant corporation's double jeopardy rights or that these rights were ever considered by any party to the proceedings. Subsequently, on March 15, 1982, sentence was pronounced in both cases; Broce Construction Co. received a $750,000 fine for the antitrust count in each case, for a total fine of $1,500,000, and Ray C. Broce received a $50,000 fine and two years imprisonment for each antitrust charge, the two 2-year prison terms to run concurrently. Mr. Broce paid his $100,000 total fines on June 2, 1982, and

* Honorable Luther Bohanon of the United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

has already completed his prison terms. Broce Construction Co. was allowed to pay its fines in installments and still owes a substantial sum despite timely payments.

On February 22, 1983, the defendants, pursuant to F.R.Crim.P. 35(a),[1] filed a motion to vacate the judgment and sentence of the trial court in the second-filed case (here No. 83–2558) claiming that the judgment and sentence therein were illegal for violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. This motion was prompted by a memorandum and order filed on January 31, 1983, in a similar case in the same judicial district, *United States of America v. Beachner Construction Co., Inc.*, 555 F.Supp. 1273 (D.Kan.1983), *affirmed* by this court, 729 F.2d 1278 (10th Cir.1984). In that case, District Judge Saffels found, after an evidentiary hearing, that a second prosecution, for conspiracy to rig bids on Kansas highway construction projects, of defendants who had previously been acquitted by a jury under an indictment differing from the second only with respect to the specific named project and other irrelevant matters, was contrary to the Double Jeopardy Clause. Defendants in the instant case claim that, as in *Beachner*, the second indictment filed against them, though purporting to charge a separate conspiracy than that charged in the first indictment by naming a different construction project, in fact did no more than again draw them into jeopardy for another part of a single overall conspiracy. The district court below found, however, that by pleading guilty to both indictments defendants had admitted the facts and theory alleged in the indictments, that these indictments did not on their faces give rise to a double jeopardy claim, and that the defendants had effectively waived their right to raise a double jeopardy claim based upon any version of the facts differing from that admitted by their guilty pleas. In effect, the district court left open, without deciding, the possibility that the sentences imposed for the second indictment did in fact, if not on the face of the indictment, violate the double jeopardy clause, but determined that even if the sentences were so illegal, the defendants had waived by pleading guilty their right to challenge the sentences on that basis.

The fundamental rule of law which, *ceteris peribus*, would govern this case is that "a single continuing conspiracy, however diverse its objects, cannot be broken down into component sub-agreements for the purpose of multiple punishments or multiple prosecutions." *United States v. Tanner*, 471 F.2d 128, 141 (7th Cir.1972) *citing Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *cf. Sanabria v. United States*, 437 U.S. 54, 72, 98 S.Ct. 2170, 2183, 57 L.Ed.2d 43 (1978); *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977).[2] The evidentiary corollary states that "[w]hen ... the separate conspiracies [alleged] are both founded upon a general conspiracy statute, the relevant inquiry is whether there existed more than one *agreement* to perform some illegal act or acts. *Ward v. United States*, 694 F.2d 654, 661 (11th Cir. 1983)" (emphasis in original).

■ We are confronted at the outset, however, with the question of what effect, if any, the defendants' guilty pleas have on the applicability of these general rules. Well-established precedent in this circuit prescribes that a guilty plea by a defendant waives his right to challenge his consequent sentence on the grounds of double jeopardy. This rule was clearly spelled out

---

1. Fed.R.Crim.P. 35(a) provides that "The court may correct an illegal sentence at any time ..."

2. Lest we go adrift in what one Supreme Court justice has termed "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator", *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), this case should be dis-

tinguished from one in which the government has alleged that a single transaction violates two distinct conspiracy statutes. *Id., American Tobacco Co. v. United States*, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Here it is clear that only one conspiracy statute, 15 U.S.C. § 1, is involved and that the government has alleged repeated violations of it.

in the following language from *Caballero v. Hudspeth,* 114 F.2d 545, 547–48 (10th Cir.1940):

> The two counts of the indictment stating but a single offense, it follows that petitioner suffered double jeopardy under the sentence of the court.

> The question of double jeopardy may not, however, be raised by petitioner in the present proceeding. On June 7, 1937, petitioner withdrew his former plea of not guilty and entered a plea of guilty to both counts of the indictment. No objection was raised at any stage of the proceedings to the sentence of the court. *The right to not be placed in jeopardy twice for the same offense is a personal right. It is an immunity granted to the citizen by our constitution and may be waived. The plea of guilty by the defendant constituted a waiver of this right.* At no stage of the proceedings did he assert this constitutional guarantee. The defense may not now be raised for the first time by writ of habeas corpus. *Brady v. United States,* 8 Cir. [1928], 24 F.2d 399; *Curtis v. United States,* 10 Cir. [1934], 67 F.2d 943; *United States ex rel. Poch v. Hill,* 3 Cir. [1934], 71 F.2d 906, 907; *Bracey v. Zerbst,* 10 Cir. [1937], 93 F.2d 8.

(emphasis added). As recently as *Cox v. Crouse,* 376 F.2d 824, 826 (10th Cir.1967) this court stated:

> We find it unnecessary to decide whether Cox, by rearraignment on the original kidnapping charge, was again placed in jeopardy for an offense of which he had been acquitted. Here the appellant pled guilty after his rearraignment and thereby waived his defenses to the charge, including, but not by way of limitation, the defense of double jeopardy.

Indeed, cases in support of this view of the double jeopardy right were legion from all jurisdictions prior to 1975. *See e.g.,* cases cited in *Brady v. United States,* 24 F.2d 399, 405 (8th Cir.1928).

This line of cases, however, was supported only by scant and oblique citation to Supreme Court precedent and its validity has been drawn into question in recent years by the High Court's opinions in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975). In *Green v. Estelle,* 524 F.2d 1243 (5th Cir.1975), for example, the Fifth Circuit reversed a district court decision that expressly relied upon the above-cited portion of *Cox v. Crouse* because it found the *Menna* decision, handed down while *Green* was pending before the circuit, to be controlling. *Id.* at 1244. Though *Caballero* has been cited by this court as established, though not dispositive, precedent as recently as 1978, *United States v. Rich,* 10th Cir., 589 F.2d 1025, 1032, 1033, we have never had occasion to consider the continuing validity *vel non* of *Caballero* in the light of *Blackledge* and *Menna.* From the discussion which follows, we feel it is clear that *Caballero* can no longer stand and must be overruled.

*Blackledge* is not actually a double jeopardy case. Though the respondent there had claimed that his double jeopardy right was infringed, the court did not reach that issue, deciding the case instead on due process grounds. The case involved a criminal defendant in North Carolina who exercised his right to a trial *de novo* on appeal to a County Superior Court after conviction for a misdemeanor offense in the County District Court. After he filed his appeal, but before the trial *de novo* was held, Perry, the defendant, was indicted on a felony charge based upon the same conduct involved in his earlier misdemeanor conviction. Perry pled guilty to the felony charge and was sentenced to five to seven years in the penitentiary. The case came before the Supreme Court on subsequent habeas proceedings. The Court first held that the potential for prosecutorial vindictiveness inherent in North Carolina's treatment of Perry rendered the filing of the felony indictment a violation of due process. Then the Court addressed the issue of whether Perry's guilty plea to that indictment had waived his right to raise the

due process issue in federal habeas corpus proceedings.

The Court directly addressed the government petitioner's reliance upon earlier cases in which a guilty plea had been found to waive certain constitutional rights, namely, *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) and the so-called "Brady trilogy: " *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Two of these cases, *Brady* and *McMann,* have also been used by the government in the instant case to support its claim that the present defendants are precluded from raising their double jeopardy claims now. Because the Court's discussion of the "fundamental distinction" between the rights involved in those cases and that invoked by Perry in *Blackledge* reveals a conceptual difference of paramount importance for understanding the Double Jeopardy Clause, it is quoted here at length:

> While petitioners' reliance upon the *Tollett* opinion is understandable, there is a fundamental distinction between this case and that one. Although the underlying claims presented in *Tollett* and the *Brady* trilogy were of constitutional dimensions, none went to *the very power of the State to bring the defendant into court to answer the charge brought against him.* The defendants in *McMann v. Richardson,* for example, could surely have been brought to trial without the use of the allegedly coerced confessions, and even a tainted indictment of the sort alleged in *Tollett* could have been "cured" through a new indictment by a properly selected grand jury. In the case at hand, by contrast, the nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon the respondent to answer to the more serious charge in the Superior Court. Unlike the defendant in *Tollett,* Perry is not complaining of "antecedent constitutional violations" or of a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 266, 267 [93 S.Ct. at 1607, 1608]. Rather, *the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge.* The *very initiation of the proceedings* against him in the Superior Court thus operated to deny him due process of law.

> *Last Term in Robinson v. Neil, 409 U.S. 505 [93 S.Ct. 876, 35 L.Ed.2d 29] in explaining why the Double Jeopardy Clause is distinctive, the Court noted that "its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial."* Id., at 509 [93 S.Ct. at 878]. While our judgment today is not based upon the Double Jeopardy Clause, we think that the quoted language aptly describes the due process right upon which our judgment *is* based. The "practical result" dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus.

417 U.S. at 30–31, 94 S.Ct. at 2103–2104 (emphasis added).

In *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), this same reasoning was applied to a straight forward double jeopardy claim. There the petitioner had refused both to answer questions put to him by a grand jury and to obey a court order to testify before the same grand jury. His failure to obey the court order was punished as contempt with a 30-day jail term, which he served. Over a year later he was indicted for refusing to answer questions before the grand jury.

He raised his double jeopardy claim in the trial court but was overruled and subsequently pled guilty to the indictment. On appeal he again claimed that the Double Jeopardy Clause barred the prosecution of the indictment, but the New York Court of Appeals found that this claim had been waived by his counseled plea of guilty. The Supreme Court, in a very short opinion, granted certiorari and reversed and remanded the case for determination on the merits of the double jeopardy claim. The *per curiam* opinion states simply:

> Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty. *Blackledge v. Perry*, 417 U.S. 21, 30 [94 S.Ct. 2098, 2103, 40 L.Ed.2d 628] (1974).

423 U.S. at 62, 96 S.Ct. at 242.

If the Court had been content to rest with that statement, *Menna* could easily be seen to be dispositive of the present controversy. However, at the end of a substantial footnote the Court hedged its *Menna* holding:

> We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.

423 U.S. at 62, 63 n. 2, 96 S.Ct. at 242 n. 2. This statement has been used by some courts to effectively deprive *Menna* of any force whatsoever. For example, *United States v. Herzog*, 644 F.2d 713, 716 (8th Cir.), *cert. denied* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981), involving habeas proceedings by a criminal defendant seeking to withdraw several guilty pleas, states that "double jeopardy is a personal defense and not jurisdictional ... [and] usually cannot, after conviction, be raised" in habeas proceedings. This is a mere recitation of the former rule which appears to fly directly in the face of the theory of the Double Jeopardy Clause set forth in *Blackledge* and *Menna*.

Citing *Herzog*, the government suggests that the present case is distinguishable from *Menna* because there the defendant first raised his double jeopardy claim in the trial court before pleading guilty, while here Broce and his attorneys made no mention of the right until more than a year after the guilty pleas were entered. The *Menna* court, however, did not indicate in any way that its decision was premised upon the fact that the double jeopardy issue in that case was raised prior to the guilty plea. Instead, it focused on the fact that if the indictment violated the Double Jeopardy Clause the *State* was precluded by the Constitution from forcing the defendant into court in the first place. Indeed, *Blackledge*, upon which *Menna* is firmly based, shows conclusively that claims relevant to "the very power of the state to bring the defendant into court" can be raised after a guilty plea, even, *Herzog* notwithstanding, in habeas corpus proceedings.

We feel that a more appropriate reading of *Menna* would find the Supreme Court's intent to be that while it is possible for a criminal defendant to waive his double jeopardy rights, a mere plea of guilty, without more, is not such a waiver. *Cf. United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir.1978). ("upon review of *Blackledge* ... and *Menna* ... it is *certain* that the preclusive effects of guilty pleas do not apply to constitutional claims which go 'to the very power of the State to bring the defendant into court to answer the charge brought against him.' *Blackledge v. Perry, supra*, 417 U.S. at 30 [94 S.Ct. at 2103] ..." (emphasis added)); *Green v. Estelle*, 524 F.2d 1243, 1244 (5th Cir.1975) ("*Menna* ... holds that where a valid double jeopardy claim would preclude a constitutional prosecution, a plea of guilty to that charge does not extinguish the double jeopardy claim."). The distinction between so-called "personal rights" and "jurisdictional defects" employed in *Herzog* and in this court's own former opinions has not been endorsed by the Supreme Court and is

clearly inadequate to accommodate the "distinctive" character of the Double Jeopardy Clause. *Blackledge*, 417 U.S. at 31, 94 S.Ct. at 2104; *Robinson v. Neil*, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973).[3]

This understanding of *Menna* is reinforced when the portion of footnote 2 in that opinion, quoted above and seized upon by the *Herzog* court to justify its errant interpretation, is read in conjunction with the preceding portion of the footnote:

> Neither *Tollett v. Henderson*, 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), nor our earlier cases on which it relied, *e.g.*, *Brady v. United States*, 397 U.S. 742 [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970), and *McMann v. Richardson*, 397 U.S. 759 [90 S.Ct. 1441, 25 L.Ed.2d 763] (1970), stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations. If they did so hold, the New York Court of Appeals might be correct. However, in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases, 411 U.S., at 266 [93 S.Ct. at 1607]. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim.

**3.** *Cf.* Fed.R.Crim.P. 12(b) and the corresponding *Note of the Advisory Committee on Rules*, providing that objections based on former jeopardy, like those pleading lack of jurisdiction, are not waived by failure to raise them before trial as many other objections based upon constitutional rights are.

423 U.S. at 62, 63 n. 2, 96 S.Ct. at 242 n. 2 (emphasis in original)[4]

In point of fact, the Supreme Court has never endorsed a "waiver" theory with regard to double jeopardy rights, even when holding, for example, that the Double Jeopardy Clause "does not relieve a defendant from the consequences of his voluntary choice" to "seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence," *i.e.*, preindictment delay, so that the government was entitled to appeal the trial court's granting of the requested dismissal. *United States v. Scott*, 437 U.S. 82, 98, 99, 98 S.Ct. 2187, 2197, 2198, 57 L.Ed.2d 65 (1978). In *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), a criminal defendant was indicted and tried for first degree murder. The jury, after instruction on the lesser included offense, found the defendant guilty only of second degree murder, and its verdict was silent as to the first degree charge. On appeal the conviction was reversed and remanded for a new trial. On remand the defendant, despite his plea of former jeopardy, was again tried for first degree murder, instead of second degree, was convicted and sentenced to death. The Supreme Court's opinion reversing the second conviction contains the following discussion:

> [T]he Government contends that Green "waived" his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a *successful* appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. "Waiver" is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. *Cf. Johnson v. Zerbst*, 304 U.S.

**4.** In the present case, defendants in fact continue to admit their guilt, and any other factual issues involved in their pleas to the second indictment are actually irrelevant. The trial court's reasoning to the contrary will be discussed in more detail later.

458 [58 S.Ct. 1019, 82 L.Ed. 1461]. When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he "chooses" to forego his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice. And as Mr. Justice Holmes observed, with regard to this same matter in *Kepner v. United States*, 195 U.S. 100, at 135 [24 S.Ct. 797, at 807, 49 L.Ed. 114]: "Usually no such waiver is expressed or thought of. Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error, unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States."

355 U.S. at 191, 192, 78 S.Ct. at 225, 226 (emphasis in original).

In the present case, the offenses and punishment involved are much less serious than those involved in *Green*. Nonetheless, there is in this case, too, little evidence of a voluntary knowing relinquishment of the double jeopardy right. As was said in *United States v. Anderson*, 514 F.2d 583, 586 (7th Cir.1975), decided before *Menna*, "[a] double jeopardy defense is normally not the type of claim that would be foregone for some strategic purpose." In this case the defendants did not receive a copy of the second indictment until nearly four days after it was filed and pled guilty to it immediately thereafter. The record is devoid of any indication that, prior to these pleas, a waiver of double jeopardy rights was discussed or bargained for by the government or was in any way brought to the attention of Mr. Broce or his counsel. The trial court's cautionary remarks to Mr. Broce prior to accepting his pleas reminded him of a full catalog of constitutional rights with the notable exception that no reference whatsoever was made to the protection created by the Double Jeopardy Clause. The very fact that defendants did not raise their double jeopardy claim until after the *Beachner* opinion was filed is

some indication that prior to the guilty pleas Mr. Broce and his counsel had not even considered the matter. The record in fact contains, in the uncontradicted affidavit of the attorney who represented the defendants when they pled guilty and later at their sentencing, positive evidence that the question of double jeopardy was not considered by defendants prior to their pleas. In short, being mindful of the rule that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights,' " *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) *quoting Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937) and *Ohio Bell Telephone Co. v. Public Utilities Comm'n.*, 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937), this court is compelled to conclude that, with respect to the defendants' double jeopardy rights, there has been no "intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023.

The trial court below found yet another seeming loophole in the *Menna* opinion. Focusing again on the qualifying footnote remark quoted above, the district court noted that the last sentence limited the force of *Menna* to allow raising a double jeopardy claim after a guilty plea only against an indictment that "judged on its face" was violative of the Double Jeopardy Clause. The trial court then observed that in contrast to the indictment in *Menna* "the challenged second indictment in the instant case (No. 82–20011–01) does not *on its face* seek to punish the defendants for the same conduct for which they were charged in the previous indictment (No. 81–20119–01)." slip op. at 8 (Nov. 18, 1983) (emphasis in original). Concluding that the precise issue before it had never been expressly decided by the Supreme Court, the trial court followed the holding of *Kerrigan v. United States*, 644 F.2d 47 (1st Cir.1981) to find that a guilty plea bars a criminal defendant

from demonstrating a valid double jeopardy claim based on any version of the facts differing from that stated in the indictments against him. We find this interpretation of *Menna,* and of the United States Constitution, and its application to the present cases to be deficient in several respects which we will examine in turn.

First, we consider the trial court's finding that the present indictments on their faces allege distinct criminal conspiracies. For this purpose it will be necessary to consider the actual language of these indictments in some detail. Without quoting, it may be noted that the following pairs of numbered paragraphs from the two indictments are in fact identical:

| First Indictment | Second Indictment |
|---|---|
| Case No. 81–20119–01 | Case No. 82–20011–01 |
| ¶ 1 (a) & (b) | ¶ 1(a) & (b) |
| ¶ 2 | ¶ 2 |
| ¶ 3 | ¶ 3 |
| ¶ 4 | ¶ 4 |
| ¶ 7 | ¶ 6 |
| ¶ 8 | ¶ 7 |
| ¶ 9 | ¶ 8 |
| ¶ 10 | ¶ 9 |

In addition, section VI of each indictment, consisting of paragraph 13(a)-(d) in the first case and paragraph 14(a)-(d) in the second, which describes the "Effects" of the alleged conspiracies, differ only in that where the first indictment refers to a "Federal-Aid highway project" the second refers to a "public highway construction project."

The following language appearing in the "Offense Charged" section is also identical in both indictments. The blanks denote differences in paragraph numbers, project numbers, dates, the above-mentioned substitution of "public highway construction" for "Federal-Aid highway," and finally, a single sub-paragraph differing in substance:

_____. The aforesaid combination and conspiracy consisted of an agreement, understanding and concert of action among the defendants and co-conspirators, the substantial terms of which were:

(a) to allocate to Broce Construction Co., Inc. Project No. _____ let by the State of Kansas on _____; and

(b) To submit collusive, noncompetitive, and rigged bids to the State of Kansas in connection with the above-referenced _____ project.

_____. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators have done those things which, as hereinbefore charged, they have combined and conspired to do, including:

(a) Discussing the submission of prospective bids on the above-described project let by the State of Kansas, Project No. _____.

(b) Designating the successful low bidder on the above-referenced public highway construction project;

(c) Submitting intentionally high or complementary bids on the above-referenced _____ project on which Broce Construction Co., Inc. had been designated as the successful low bidder;

(d) Submitting bid proposals on the above-referenced _____ project containing false, fictitious and fraudulent statements and entries; and

(e) _____.

The missing subparagraph (e) in the first indictment contains the significant allegation: "Discussing the submission of prospective bids on other projects let by the State of Kansas on April 25, 1978." This clearly indicates that the conspiracy prosecuted by the first indictment encompassed more Kansas highway projects than No. 23–60–RS–1080(9). In fact, the "Statement of Facts in Support of Pleas" appended by the government to the plea agreements filed in these cases on February 8, 1982, reveals that the other projects discussed in conjunction with the rigging of bids on Project No. 23–60–RS–1080(9) were *not* all let on the same date, April 25, 1978. Page two of that "Statement of Facts" contains the following sentence:

James Carlile told defendant, Ray Broce, that he believed that Carlile Asphalt should be the low bidder on the Meade County project [i.e. No. 23–60–RS–1080(9) ] and that Broce Construction Co. should be the low bidder on a Gray County project which was going to be let at the *next* State Highway letting.

(emphasis added). Though this "Statement of Facts" is not technically a part of the indictment, it was a part of the record before the court below at the time the guilty pleas were accepted and is the government's own account of what the defendants were admitting by their pleas. It would take a singularly myopic view of the indictment to completely ignore this statement when determining what conspiracy the indictment alleges on its face. Clearly the indictment does *not* state that the conspiracy involved in the rigging of Project No. 23–60–RS–1080(9) concerned *only* that project or even just the April 25, 1978, bid letting, unless we are to presume that the government chose the indictment language in a deliberate attempt to misstate the facts.

Finally, the following quoted paragraph is the key passage of the first indictment which states the essential elements of the crime alleged:

11. Beginning sometime in or about April, 1978, *and continuing thereafter, the exact dates being to this grand jury unknown,* in the District of Kansas, Ray C. Broce, Gerald R. Gumm and Broce Construction Co., Inc., defendants herein, *and others known and unknown,* entered into and engaged in a combination and conspiracy to suppress and eliminate competition for the construction of Project No. 23–60–RS–1080(9) let by the State of Kansas on April 25, 1978, which contract involved construction work on a Federal-Aid highway in the State of Kansas, in unreasonable restraint of the above-described interstate trade and commerce in violation of Title 15, United

States Code, Section 1, commonly known as the Sherman Act.

(emphasis added). The second indictment differs only in the following respects:

1. The first date is changed from April, 1978, to July, 1979, and the second from April 25, 1978, to July 17, 1979;

2. The name Gerald R. Gumm does not appear in the second indictment even though the government's "Statement of Facts" clearly indicates that he had an active role in that bid-rigging as well;

3. Project No. 23–60–RS–1080(9) is replaced by Project No. KRL 29–2(26);

4. The word "public" is substituted for the first indictment's "Federal-Aid;"

5. The paragraph is numbered "10."

The portions of the first indictment's version underscored above reveal the vague and indefinite character of the indictments. The indictments state approximate beginning dates for the conspiracies but give no conclusion dates, stating merely that they were "continuing." Nothing in the first indictment would preclude a finding that the conspiracy alleged therein was "continuing" throughout the period encompassed by the second indictment. The indictments do not even specify with definiteness who was involved in the alleged conspiracies. Nothing would preclude a finding that all of the people participating in the first alleged conspiracy were also participants in the second. And finally, as noted previously, there is nothing in the first indictment to indicate that the agreement and conspiracy described therein with regard to Project No. 23–60–RS–1080(9) did not also encompass other projects and and other bid-letting dates. Indeed, nothing in either indictment is definitely inconsistent with the view that the conspiracies they allege are in fact identical, and, further, are identical with the ongoing conspiracy to rig bids, extending over a period exceeding a quarter century, that was found by Judge Saffels in *Beachner,* 555 F.Supp. at 1277–1279.[5]

5. It is significant that Judge Saffels in his opinion stated:

Although witnesses denied any overall agreement or understanding or participation in a single conspiracy, there can be no doubt that

In contrast, in *Kerrigan v. United States, supra,* 644 F.2d at 48 n. 1 and n. 2, relied upon by the court below, the indictments are much less vague and it is easier to make the case that they do in fact alleged distinguishable conspiracies. First of all, the Kerrigan indictments give a specific month *and date* for both the beginning and the ending of the conspiracies alleged. There is no fudging of the time periods by use of the "exact dates being to this grand jury unknown" language found in both of the present indictments. Further, the time periods alleged for each conspiracy overlap by only one day. Again, there is no vagueness as to who was involved in the *Kerrigan* conspiracies. Although two of the three persons named in the first indictment also were named by the second indictment, there is no catch-all "and others known and unknown" phrase. Lastly, although we do not endorse the view that a difference in overt acts alleged by itself compels a finding that multiple indictments do not violate the double jeopardy clause, *see United States v. Mallah,* 503 F.2d 971, 985 (2nd Cir.1974), it is pertinent that the *Kerrigan* indictments each refer to the interstate transport of a single lot and type of stolen goods and contain no hints, as the first indictment in the present case does, that other illegal acts were discussed or bargained for in connection with the ones specifically alleged. Based on these considerations, we find, without approving of the result reached by the *Kerrigan* court upon the facts before it, that that case must be distinguished from the present one.

We also are disturbed by the *Kerrigan* court's suggestion that a criminal defendant who pleads guilty to multiple indictments may not "later contest the factual and theoretical foundations of the indictment to which he pleaded, so as to show that, in fact, he committed only a single offense." 644 F.2d at 49. The *Menna*

footnote quoted above nowhere mentions that the theoretical or, for that matter, factual *foundations* of an indictment are admitted by a guilty plea. Instead, the *Menna* footnote addresses only the questions of factual *guilt.* Here, indeed, the defendants have admitted the fact that they are guilty of conspiracy to rig highway construction bids—and continue to do so on appeal, but, as in *Menna,* their "claim is that the [government] may not convict [them] no matter how validly [their] factual guilt is established." 423 U.S. at 62, 63 n. 2, 96 S.Ct. at 242 n. 2. See *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977) ("the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, i.e., whether or not the accused is guilty of the offense charged.") We decline to believe that their right to raise this question is conditioned by the government's choice of words in its indictments.

This case is more appropriately seen in relation to the following comments made nearly half a century ago in *Short v. United States,* 91 F.2d 614, 624 (4th Cir.1937):

Blanket charges of "continuing" conspiracy with named defendants and with "other persons to the grand jurors unknown" fulfil a useful purpose in the prosecution of crime, but they must not be used in such a way as to contravene constitutional guaranties. If the government sees fit to send an indictment in this general form charging a continuing conspiracy for a period of time, it must do so with the understanding that upon conviction or acquittal further prosecution of that conspiracy during the period charged is barred, and that this result cannot be avoided by charging the con-

---

bid rigging *was a way of life* in the industry in Kansas. The court cannot imagine that any contractor was not aware of the prevailing practice or unfamiliar with the common jargon and mechanics of rigging a bid.

555 F.Supp. at 1778. In sentencing Mr. Broce, Judge O'Connor below stated:

Specifically, as to the offenses in question here, though, it would appear that this defendant and this company played a significant role in making bid rigging *a way of life* in the highway construction business in this state. (ROA 201).

spiracy to have been formed in another district where overt acts in furtherance of it were committed, or by charging different overt acts as having been committed in furtherance of it, or by charging additional objects or the violation of additional statutes as within its purview, if in fact the second indictment involves substantially the same conspiracy as the first. And, if two indictments charging continuing conspiracy and covering the same period in whole or in part are drawn with blanket coverage "with other persons to the grand jurors unknown," a plea of former jeopardy should be submitted to the jury if there is proof that the same partnership in criminal purposes is prosecuted by both, even though the appearance of identity of offenses may have been avoided in the indictment by charging a different place of conspiracy, or by joining additional defendants, or by charging different overt acts, or by charging the violation of additional statutes as being among the objects of the conspiracy. The constitutional provision against double jeopardy is a matter of substance and may not be thus nullified by the mere forms of criminal pleading.

Though we disagree with the *Short* court's indication that the question of double jeopardy is one for a jury to decide, *cf. Pryor v. Rose*, 724 F.2d 525, 528 (6th Cir.1984), we agree with its view that the government cannot be allowed to evade the Double Jeopardy Clause by using vague indictments, facially distinguishable only by their reference to different overt acts, here, the submission of rigged bids on different construction projects.

In *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), the Supreme Court stated:

"The Double Jeopardy Clause is not such a fragile guarantee that ... its limitations [can be avoided] by the simple expedient of dividing a single crime into a series of temporal or spatial units," *Brown v. Ohio*, 432 U.S. at 169 [97 S.Ct. at 2227], or, as we hold today, into "discrete bases of liability" not defined as such by the legislature. See *id.* at 169 n. 8 [97 S.Ct. at 2227 n. 8].

437 U.S. at 72, 98 S.Ct. at 2183. Although *Sanabria* did not involve issues or circumstances strictly comparable to those at hand, the Court's reminder is well taken in the present context. We believe that the *Menna* court never intended to suggest that the Constitution's protection against double jeopardy is such a "fragile guarantee" that it could be taken from a defendant who has pled guilty to an indictment merely because that indictment differs from a previous indictment through the government's purely cosmetic manipulation of the facts alleged.

■ We hold that where a criminal defendant raises a non-frivolous claim that he has been haled into court in violation of the Double Jeopardy Clause on a charge which does not on its face show clearly, indubitably and without any ambiguity that the government's prosecution of that charge was constitutionally permissible, that defendant is entitled to a decision on the merits of his double jeopardy claim unless it is demonstrated that he has made an informed and intentional relinquishment specifically of his rights under the Double Jeopardy Clause of the United States Constitution. This right is unaffected by any plea to the challenged charge.

While these cases have been pending before us, we have affirmed Judge Saffels' *Beachner* findings as not clearly erroneous. *United States v. Beachner Const. Co. Inc.*, 729 F.2d 1278 (10th Cir.1984). Judge O'Connor, the trial judge below in the instant cases, sat with us on that appeal. Further highlighting the close connection between these cases and *Beachner*, before Judge O'Connor issued his opinion on the present cases below, both the defendants and the government entered a stipulation into this record that Judge O'Connor could consider, for the purposes of his ruling on the defendants' motion to vacate, the record made by Judge Saffels in the evidentiary hearing on the *Beachner* double jeopardy claim.

Given their broadest interpretation, the findings of fact made in *Beachner* and affirmed by this court would seem to imply that there was never more than one conspiracy engaged in by any Kansas highway contractor. We take the government's stipulation below that the record of the evidentiary hearing in *Beachner* could be used in deciding the motion on the defendants' double jeopardy claims in this case to be an admission that, apart from the issue of the effect of the guilty pleas entered herein, this case does not present a significantly different set of factual circumstances with respect to the actual existence of a Double Jeopardy Clause infringement. Facts therefore now appearing in this record lead to the conclusion that the defendants have been twice punished for their participation in a single continuing conspiracy. Because their double jeopardy rights have been so violated, the judgment and sentence entered under the second indictment below were illegal and the defendants' Rule 35(a) motion must be granted.

Accordingly, the judgment and sentence entered by the district court on March 15, 1982 in case No. 83–2558 is hereby vacated. There being no contest of the judgment and sentence in case No. 83–2559, that appeal is dismissed.

Circuit Judge SETH will file a separate opinion.

Separate opinion by Circuit Judge SETH.

I cannot agree with the majority opinion of the panel and must file this separate opinion.

We held in *Caballero v. Hudspeth*, 114 F.2d 545 (10th Cir.1940), where two counts in an indictment stated but one offense, that the plea of guilty to both counts with no objection raised during the proceedings constituted a waiver of the right not to be placed in jeopardy (punished) twice for the same offense. We there said in part:

"The right to not be placed in jeopardy twice for the same offense is a personal right. It is an immunity granted to the citizen by our constitution, and may be waived. The plea of guilty by the de-

fendant constituted a waiver of this right. At no stage of the proceedings did he assert this constitutional guarantee. The defense may not now be raised for the first time by writ of habeas corpus."

The same holding appears in *Cox v. Crouse*, 376 F.2d 824 (10th Cir.1967). In *United States v. Rich*, 589 F.2d 1025 (10th Cir.1978), in 1978, we again referred to the doctrine and said of *Caballero v. Hudspeth:*

"[I]n *Caballero v. Hudspeth*, 114 F.2d 545 (10th Cir.1940), we identified the right not to be placed in jeopardy twice for the same offense as a personal right which could be waived by the accused by an intelligent, knowledgeable plea of guilty."

We did not discuss in *United States v. Rich* the Supreme Court case of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), nor *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), which had then been decided. Most all circuits have held as we did that the claim of double jeopardy is a personal right which may be waived. Thus it is not a jurisdictional matter.

In view of the limitations of *Blackledge* and the facts in *Menna* it is my view that this panel cannot overrule *Caballero* on the authority of those two cases. Other circuits with but one exception have not applied *Blackledge* and *Menna* in the way that the panel majority would. Before we should change such a basic doctrine the case should be heard *en banc*. There is an added element in the problem arising from the fact that the guilty pleas in this case were part of a plea bargain presumably considered by the defendants to be beneficial to them. This may or may not make a difference.

*Blackledge* was not a double jeopardy case, and it seems best to discuss instead *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195, which is a double jeopardy case. Appellants urge that it requires a change in the guilty plea waiver-

personal right doctrine in this circuit. The panel majority agrees.

*Menna* concerned a procedural situation where the defendant had before trial moved to dismiss the indictment on double jeopardy grounds. The motion was denied and the defendant then entered a plea of guilty to the second indictment. The Supreme Court held there was no waiver.

Virtually all the courts of appeal since *Menna* have continued to hold that the defense is waived if not raised in some way before or at trial *as it was in Menna*. This is a perfectly reasonable construction of *Menna* where the defense was so raised. The Court in *Menna* stated that a plea of guilty "removes the issue of factual guilt from the case." The Court also there stated:

> "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."

The indictments in the case before us do on their faces allege separate offenses. By the guilty pleas the defendants admitted the recitations in the indictments, and these are the facts to be used in evaluating the double jeopardy claims. *Kerrigan v. United States*, 644 F.2d 47 (1st Cir.1981). These facts recite separate offenses.

The case which upholds appellants' position that *Menna* precludes waiver, and it may be the only case, is *Launius v. United States*, 575 F.2d 770 (9th Cir.1978). The post-*Menna* cases with contrary holdings (or which consider situations where the defense was raised at or before trial and so hold no waiver) include: *United States v. Pratt*, 657 F.2d 218 (8th Cir.1981); *United States v. Broussard*, 645 F.2d 504 (5th Cir.1981); *United States v. Gaertner*, 583 F.2d 308 (7th Cir.1978); *United States v. Inmon*, 568 F.2d 326 (3d Cir.1977); *United States v. Wild*, 551 F.2d 418 (D.C.Cir.1977). As to the effect of a plea bargain, *see Brown v. State of Maryland*, 618 F.2d 1057 (4th Cir.1980).

The majority of cases which have considered the issue thus hold contrary to the position taken by the majority of the panel. These decisions instead continue the waiver doctrine in a way consistent with *Menna*, and in a way which precludes appellants in this appeal from asserting the defense for the first time in any way one year after the pleas.