*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellant

**v.**

**Michael S. MALONE Jr., Sergeant First Class**
United States Army, Appellee

**No. 25-0140**
Crim. App. No. 20230151

Argued October 7, 2025—Decided January 20, 2026

Military Judge: Jessica R. Conn

For Appellant: *Major Vy T. Nguyen* (argued); *Colonel Richard E. Gorini* (on brief).

For Appellee: *Captain Andrew W. Moore* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Robert D. Luyties*, and *Major Cody D. Cheek* (on brief); *Colonel Frank E. Kostik Jr.*

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, and Judge JOHNSON joined. Judge HARDY filed a separate dissenting opinion.

————————

Chief Judge OHLSON delivered the opinion of the Court.

The Government charged Appellee with several offenses, to include three specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b (2018). The conduct underlying these domestic violence specifications occurred at the same time and in the same place, and they involved the same victim and were of the same nature, thereby raising the specter of multiplicity. And notably, Rule for Courts-Martial (R.C.M.) 907(b)(3)(B) (2019 ed.) explicitly states that multiplicity serves as a proper ground for dismissal of specifications.

At trial, the military judge informed Appellee that "any motions to dismiss . . . should be made at this time." Appellee's defense counsel responded, "no motions." Appellee then pleaded guilty to the three domestic violence specifications.

On appeal to the United States Army Court of Criminal Appeals (CCA), Appellee for the first time challenged these specifications as being multiplicious. A panel of the CCA held that Appellee waived the multiplicity issue at trial. However, when the CCA granted Appellee's request for en banc reconsideration, the en banc CCA concluded that there was no waiver[1] and then held that the domestic

---

[1] It is important to note that the President has changed the landscape in this area of the law, making waiver issues more clear-cut. Effective July 28, 2023, R.C.M. 910(j)—the waiver provision for guilty pleas—now states:

> Except as provided in paragraph (a)(2) of this rule, a plea of guilty that results in a finding of guilty waives any objection, whether or not previously raised, as to the factual issue of guilt of the offense(s) to which the plea was made and any non-jurisdictional defect as to the offense(s) to which the plea was made that occurred prior to the plea.

R.C.M. 910(j) (2024 ed.). Appellee's offenses occurred before the effective date of this new provision. *See* Exec. Order No. 14,103

violence specifications were indeed multiplicious. *United States v. Malone*, 85 M.J. 573, 576 (A. Ct. Crim. App. 2025) (en banc).

The acting Judge Advocate General of the Army (TJAG) certified two issues for our review:

> I. Whether the Army Court erred in finding Appell[ee] did not affirmatively waive multiplicity where counsel stated defense had no motions before entering unconditional guilty pleas and declined additional inquiry into matters relevant to the unit of prosecution.

> II. Whether the Army Court erred in finding Appell[ee's] convictions under Article 128b(1), UMCJ, facially duplicative when the underlying "violent offenses" were assault consummated by battery and aggravated assault.

*United States v. Malone*, 85 M.J. 457 (C.A.A.F. 2025) (docketing notice of certificate for review).

We conclude that Appellee affirmatively waived the multiplicity issue. We note the following: the military judge specifically advised defense counsel that any "motions to dismiss" should be made prior to Appellee's plea; R.C.M. 907(b)(3)(B) explicitly states that "motions to dismiss" include any multiplicity claims; the potential merits of a multiplicity claim in this case were obvious on the face of the charge sheet, in the stipulation of fact, and during the providence inquiry; and yet, defense counsel unambiguously stated that he would not be filing any motions. Based on this set of circumstances, we answer the first certified issue in the affirmative because the multiplicity issue was affirmatively waived. We therefore decline to answer the second certified issue because it is moot. Accordingly, we reverse the lower court's decision.

---

§ 1, 88 Fed. Reg. 50,535 (Aug. 2, 2023) (stating that changes in Annex I, of which R.C.M. 910(j) is a part, took effect on July 28, 2023). (Appellee's court-martial occurred on March 22, 2023.)

## I. Background

On the evening of November 30 and the early morning hours of December 1, 2022, Appellee and his girlfriend, Ms. GR, engaged in an argument that escalated into physical violence. Appellee struck Ms. GR in the face with his hand, punched her in the face, arm, shoulder, abdomen, and leg with his hand, and threw her to the ground, thereby breaking her clavicle. Among other offenses,[2] the convening authority referred three domestic violence specifications as follows:

> SPECIFICATION 1: In that [Appellee] did, . . . on or about 1 December 2022, commit a violent offense against Ms. [GR], the intimate partner of [Appellee], to wit: by unlawfully striking her in the face with his hand.
>
> . . . .
>
> SPECIFICATION 3: In that [Appellee] did, . . . on or about 1 December 2022, commit a violent offense against Ms. [GR], the intimate partner of [Appellee], to wit: by unlawfully striking her in the head, face, arm, shoulder, torso, and leg with his hand . . . .[3]
>
> SPECIFICATION 4: In that [Appellee] did, . . . on or about 1 December 2022, commit a violent offense against Ms. [GR], the intimate partner of [Appellee], to wit: unlawfully throw Ms. [GR] to the ground with his hand, and did thereby inflict substantial bodily harm, a broken clavicle.

---

[2] This argument with Ms. GR also resulted in charges of another domestic violence specification as well as one specification of aggravated assault, one specification of maiming, and one specification of obstruction of justice in violation of Articles 128, 128a, and 131b, UCMJ, 10 U.S.C. §§ 928, 928a, 931b (2018). In addition, Appellee was charged with two specifications of disobeying a superior commissioned officer in violation of Article 90, UCMJ, 10 U.S.C. § 890 (2018).

[3] This specification also alleged that Appellee unlawfully struck Ms. GR with his foot. However, Appellee pleaded guilty to this specification except for the words, "and foot," and he was found guilty of the specification without the excepted words.

Appellee agreed to plead guilty to these three domestic violence specifications and to two specifications of disobeying a superior commissioned officer in exchange for the Government dismissing the remaining specifications and charges. He also agreed to be sentenced to a bad-conduct discharge and to be sentenced separately for each domestic violence specification, all to run concurrently with a maximum confinement range of twenty-four to thirty-two months. The plea agreement contained the following "savings clause": "If before or during the trial, one or more specifications are amended, consolidated, or dismissed with [Appellee's] consent for any reason, this agreement will remain in effect." During the providence inquiry, the military judge explained that this clause meant that the agreement would remain in effect "if the court or one of the parties moved to dismiss one of the specifications."

Appellee also agreed to enter into a stipulation of fact describing his misconduct. Appellee admitted that he physically attacked Ms. GR in the master bedroom by striking her face. He "then continued to aggressively" punch Ms. GR in her face, head, right arm, right shoulder, right side abdomen, and right leg. Despite Ms. GR's pleas for him to stop, Appellee "continued the assault" by pushing her to the ground, breaking Ms. GR's clavicle.

At Appellee's arraignment, the military judge had the following exchange with trial defense counsel:

> [Military Judge]: [Appellee], how do you plead? Before receiving your plea, I advise you that any motions to dismiss or to grant other appropriate relief should be made at this time. Your defense counsel will speak for you.
>
> [Defense Counsel]: Your Honor, *the defense has no motions.*

(Emphasis added.)

Trial defense counsel then entered pleas on Appellee's behalf in accordance with the plea agreement. During the ensuing providence inquiry, Appellee admitted to

committing all three domestic violence specifications. In the discussion of these specifications with the military judge, Appellee agreed that the physical acts were "the same event" when describing the first two specifications and "all part of the same transaction" when describing all three specifications. The military judge found Appellee's plea of guilty provident, entered findings of guilty, and consistent with the plea agreement, sentenced Appellee to a bad-conduct discharge, total confinement for thirty months, and a reduction to the grade of E-3. The convening authority approved the findings and sentence, and the military judge subsequently entered judgment.

On appeal to the CCA, Appellee argued for the first time that the three domestic violence specifications were multiplicious. A panel of the CCA held that Appellee waived the multiplicity issue. Granting Appellee's request for en banc reconsideration, the en banc CCA determined there was no waiver and held that the domestic violence offenses were multiplicious. *Malone*, 85 M.J. at 576. The acting TJAG then filed a certificate for review asking, in part, whether Appellee waived the multiplicity issue.

## II. Standard of Review

" 'This Court reviews de novo whether an accused has waived an issue.' " *United States v. Harborth*, 85 M.J. 469, 475 (C.A.A.F. 2025) (quoting *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020)).

## III. Applicable Law

R.C.M. 905(e)(1)-(2) (2019 ed.) provides that a party's failure to raise defenses, motions, or objections before pleas or before adjournment forfeits these claims "absent an affirmative waiver." The CCA held that under this rule and "the presumption against waiver of constitutional protections," Appellee had merely forfeited his multiplicity defense because there was no "affirmative waiver." *Malone*, 85 M.J. at 581. The Government contests this determination, arguing that the "plain meaning of defense counsel's responses to the military judge demonstrates affirmative waiver." Appellee disagrees, arguing that trial

defense counsel did not affirmatively waive any multiplicity motion. Accordingly, this case turns on the rules that were applicable to waiver at the time of Appellee's court-martial.

Waiver extinguishes an issue, and as a result, that issue cannot be reviewed on appeal. *Harborth*, 85 M.J. at 475 (citing *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). "Waiver can occur either by a party's intentional relinquishment or abandonment of a known right *or* by operation of law." *United States v. Day*, 83 M.J. 53, 56 (C.A.A.F. 2022) (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)). Generally, an unconditional guilty plea operates to waive "all defects which are neither jurisdictional nor a deprivation of due process of law." *Id.* (internal quotation marks omitted) (quoting *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009)). This includes "multiplicity issue[s]," *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000), *except when* multiplicity involves specifications that are " 'facially duplicative,' that is, factually the same." *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997) (quoting *United States v. Broce*, 488 U.S. 563, 575 (1989)); *see also United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004) ("An unconditional guilty plea waives a multiplicity issue unless the offenses are 'facially duplicative . . . .' " (quoting *Lloyd*, 46 M.J. at 23)).

Even if specifications are facially duplicative, "[e]xpress waiver or voluntary consent . . . will foreclose" this multiplicity inquiry. *Lloyd*, 46 M.J. at 23. That is because an accused " 'may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution,' " including a double jeopardy objection based on multiplicity. *Gladue*, 67 M.J. at 314 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)).

An "express" waiver occurs when there is "the 'intentional relinquishment or abandonment of a known right,' " *id.* at 313 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)), and is accomplished via affirmative action by the accused or the accused's counsel. Affirmative action may occur when a trial defense counsel states that there is

"no objection" to a proposed course of legal action. *United States v. Swift*, 76 M.J. 210, 217 (C.A.A.F. 2017) ("[A]s a general proposition of law, 'no objection' constitutes an affirmative waiver of the right or admission at issue."); *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) ("[U]nder the ordinary rules of waiver, Appellant's affirmative statements that he had no objection to admission [of the evidence] . . . operate to extinguish his right to complain about [its] admission on appeal."). Affirmative action also may occur when an accused chooses to enter into a plea agreement with a "waive[] all waivable motions" provision. *Gladue*, 67 M.J. at 314 ("Appellant's express waiver of any waivable motions waived claims of multiplicity and unreasonable multiplication of charges and extinguished his right to raise these issues on appeal."). And affirmative action may further occur when a party seeks "[n]o changes" to a military judge's instructions. *United States v. Davis*, 79 M.J. 329, 330-32 (C.A.A.F. 2020) (holding that defense counsel waived objections to findings instructions by stating "No changes," when the military judge asked if there were any objections or requests for additional instructions and responding, "No Your Honor," when later asked if there were any objections to the findings instructions).

"There is 'a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment of a known right or privilege.'" *United States v. Smith*, 85 M.J. 283, 287 (C.A.A.F. 2024) (quoting *United States v. Sweeney*, 70 M.J. 296, 303-04 (C.A.A.F. 2011)). "'No magic words are required to establish a waiver.'" *United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014) (alteration in original removed) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)). Instead, "[t]he determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case." *Id.* (second alteration in original) (internal quotation

marks omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

## IV. Discussion

## A. Whether Counsel Can Waive a Multiplicity Claim on a Client's Behalf

Before explaining our waiver rationale, we first must address an issue raised by Appellee in his brief. Namely, whether counsel may waive a multiplicity claim on a client's behalf, or whether the client must personally waive such a claim.

Our precedent recognizes that "in certain circumstances, defense counsel may waive constitutional rights on behalf of their clients." *United States v. Harcrow*, 66 M.J. 154, 157 (C.A.A.F. 2008); *see also New York v. Hill*, 528 U.S. 110, 114 (2000) ("[W]aiver [of nonfundamental rights] may be effected by action of counsel."). As noted by the United States Court of Appeals for the Eleventh Circuit in *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc), "Criminal defendants possess essentially two categories of constitutional rights: those which are waivable by defense counsel on the defendant's behalf, and those which are considered 'fundamental' and personal to defendant, waivable only by the defendant. Generally included in the former are matters which primarily involve trial strategy and tactics."

We have previously recognized that a trial defense counsel waived a multiplicity claim on behalf of an accused in *Elespuru*, 73 M.J. at 328-29. This precedent is consistent with federal civilian courts, which have specifically allowed an accused's counsel to waive double jeopardy claims, and multiplicity claims are grounded in the Fifth Amendment right against double jeopardy.[4] In light of these

---

[4] *See United States v. Morgan*, 929 F.3d 411, 424 (7th Cir. 2019) (recognizing that double jeopardy "can be waived by counsel"); *Watkins v. Kassulke*, 90 F.3d 138, 143 (6th Cir. 1996) (holding that where "defense counsel consents as a matter of trial strategy to a mistrial, that consent binds the defendant and removes any bar to reprosecution, regardless of whether the

circumstances, we see no reason to conclude that a counsel cannot waive a facially duplicative multiplicity claim on behalf of his or her client. This is especially true because Appellee cites no caselaw and no provision in the *Manual for Courts-Martial* that would require the accused to personally engage in a waiver colloquy for this type of claim.

## B. The Merits of the Waiver Issue

We now turn our attention to the first issue raised in this case: Was the multiplicity issue waived at trial? Stated differently, we must examine whether there was an " 'intentional relinquishment or abandonment of a known right.' " *Olano*, 507 U.S. at 733 (quoting *Johnson*, 304 U.S. at 464). We are persuaded by the Government's argument that it is appropriate for this Court to consider the fact that Appellee chose not to file an ineffective assistance of counsel claim against the attorney who represented him at trial. *See Hill*, 528 U.S. at 115 ("Absent a demonstration of ineffectiveness, counsel's word on [decisions pertaining to the conduct of the trial] is the last."); *United States v.*

---

defendant participates in the decision," and rejecting dictum from *United States v. Rich*, 589 F.2d 1025, 1032 (10th Cir.1978), that an attorney lacks authority to waive double jeopardy rights on behalf of a client); *Benge v. Johnson*, CIV. A. No. 08-78-GMS, 2011 U.S. Dist. LEXIS 34324, at *27-28, 2011 WL 1230157, at *9 (D. Del. Mar. 31, 2011) (unpublished) ("Considering that a claim of double jeopardy is an affirmative defense that must be raised properly in order to avoid being deemed waived, it would be illogical to conclude that counsel cannot expressly waive a double jeopardy defense on a defendant's behalf."); *cf. United States v. Burke*, 257 F.3d 1321, 1323 (11th Cir. 2001) (noting that the Supreme Court allows defendants themselves "to make fundamental decisions for" their cases, i.e., "whether to plead guilty, waive a jury, testify in his or her own behalf or to take an appeal," and noting this list "is all the Supreme Court has said about fundamental rights that belong solely to the defendant for decision"); *cf. also McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (adding the "[a]utonomy to decide that the objective of the defense[, including] to assert innocence," to the list of fundamental decisions that accused themselves can only waive).

*Campos*, 67 M.J. 330, 333 (C.A.A.F. 2009) (citing the appellant's failure to allege ineffective assistance of counsel as a factor in this Court's waiver determination). Appellee's failure to do so results in a presumption that defense counsel acted in a competent manner, and this presumption influences our analysis of this case. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) (requiring courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," unless proven otherwise). Specifically, in the context of the record before us, we apply this presumption of competence in deciding whether Appellee and his defense counsel knew at trial of the right to seek dismissal of some of the domestic violence specifications on multiplicity grounds.[5] As seen below, there are a number of factors that cause us to conclude that this was a "known right."

First, competent counsel would know that R.C.M. 907(b)(3)(B) (2019 ed.) plainly states that multiplicity serves as a proper ground for dismissal of specifications.[6]

Second, competent counsel would not overlook a potentially meritorious multiplicity claim in a case such as this one where this issue was undeniably obvious on the face of the charge sheet, in the stipulation of fact, and during the providence inquiry. Specifically, the charges alleged three specifications of similar acts of domestic violence on the same date and involving the same victim. Further, the stipulation of fact not only reflected that the three specifications of domestic violence occurred on the same night, took place in the same location, and involved

---

[5] Our analysis is based on the context of this case, and we make no general rule on when the conduct of "fallible lawyers" establishes waiver. *United States v. Palik*, 84 M.J. 284, 293 (C.A.A.F. 2024) (citation omitted) (internal quotation marks omitted).

[6] This rule provides various "[g]rounds for dismissal," including if a "specification is multiplicious with another specification." R.C.M. 907(b)(3)(B) (2019 ed.).

the same victim, it also demonstrated that Appellee's underlying conduct was of the same nature when it noted that Appellee first struck GR's face with his hand, "then continued to aggressively" punch GR, and "continued the assault" by pushing GR to the ground. Finally, during the plea proceedings Appellee acknowledged that the domestic violence specifications were "part of the same event" and "all part of the same transaction." Thus, the potential for a meritorious multiplicity claim was repeatedly highlighted throughout this case and competent counsel would have taken notice.

Third, in the course of reviewing the "savings clause" language in the plea agreement, competent counsel would have been prodded to consider whether multiplicity issues were lurking in this case. After all, this clause contemplated that "one or more specifications [may be] amended, consolidated, or dismissed." Dismissal and consolidation of specifications are remedies for multiplicity. *See United States v. Morris*, 18 M.J. 450, 451 (C.M.A. 1984) (providing that once it became clear that "both of these assaults were parts of a single altercation between the two men[,] . . . . it was incumbent on the trial judge—and subsequently the Court of Military Review—either to consolidate the specifications or to dismiss a specification as multiplicious"); *United States v. Mayberry*, 72 M.J. 467, 467 (C.A.A.F. 2013) (summary disposition) (same). Further, competent counsel would have explained the meaning of this savings clause to his client, which would have entailed a discussion of the potential to consolidate and dismiss specifications if they were multiplicious. Indeed, Appellee acknowledged that he understood the plea agreement and that his trial defense counsel reviewed the entire agreement with him.

Fourth and finally, competent counsel would have discussed with his client the advantages and disadvantages of seeking the dismissal of some of the specifications on multiplicity grounds.

Therefore, based on these circumstances, we conclude that Appellee and his counsel knew they had a right to seek

dismissal of some of the domestic violence specifications on multiplicity grounds. Having determined that this was a "known right," we next turn to the question of whether Appellee "intentional[ly] relinquish[ed]" this right. *Day*, 83 M.J. at 56.

As outlined above, here the military judge was essentially asking trial defense counsel whether he had any objection to proceeding with the guilty plea despite the fact that he would no longer be able to file a motion to dismiss—which specifically encompassed a multiplicity claim pursuant to the language of R.C.M. 907(b)(3)(B)— and Appellee's defense counsel said, "No." This scenario is akin to those cases where a defense counsel responds "no objection" to a proposed course of legal action, and we have consistently held that this constitutes an "intentional relinquishment" of the right at issue. *See United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019) (stating that "defense counsel's agreement [with the military judge's proposal was] akin to a statement of 'no objection,' which we have previously recognized may count as an affirmative waiver"); *Campos*, 67 M.J. at 333 (holding that the appellant's failure to allege ineffective assistance of counsel along with "defense counsel's clear 'no objection' response amounted to" waiver); *see also Davis*, 79 M.J. at 330-32 (holding that the response, "[n]o changes," was indicative of waiver when asked if there were objections or requests for findings instructions). Because of the obvious parallels,[7] we reach the same result here and conclude that there was affirmative waiver.

This waiver determination is buttressed by "the particular facts and circumstances surrounding [Appellee's] case." *Elespuru*, 73 M.J. at 328 (internal quotation marks omitted) (quoting *Johnson*, 304 U.S. at 464). Key among them is the fact that Appellee received a

---

[7] Even the en banc CCA recognized that, "[a]rguably, this language does not sound that different from a defense counsel stating 'no objection' " in other contexts which this Court "has held constituted waiver." *Malone*, 85 M.J. at 580.

substantial benefit in exchange for his decision not to file a motion to dismiss and to instead plead guilty to the purportedly multiplicious domestic violence specifications. Specifically, pursuant to the plea agreement the convening authority withdrew and dismissed serious specifications—to include aggravated assault, maiming, and obstruction of justice. These specifications had the potential to significantly increase Appellee's punitive exposure during sentencing.[8] Moreover, and importantly, under the terms of the plea agreement the penalties for the potentially multiplicious offenses were required to run concurrently. Therefore, Appellee knew he did not run the risk of more confinement if he affirmatively waived the multiplicity claim.[9] Therefore, the record before us indicates that the defense made a "deliberate decision" not to challenge these arguably multiplicious specifications in order to obtain this favorable plea agreement. *United States v. Rich*, 79 M.J. 472, 475 (C.A.A.F. 2020) (citation omitted) (internal quotation marks omitted). Accordingly, we hold that Appellee intentionally relinquished his known right to pursue a multiplicity claim in this case.

## V. Conclusion

At trial, Appellee affirmatively waived his ability to raise a multiplicity claim on appeal. And because waiver extinguishes the issue, we cannot reach the question of whether the three specifications were, in fact, multiplicious. Accordingly, we answer the first certified issue in the affirmative and decline to answer the second certified issue. The decision of the United States Army Court of Criminal Appeals is reversed. The case is returned

---

[8] These dismissed offenses had a punitive exposure of an additional twenty-eight years of confinement. *See Manual for Courts-Martial, United States* pt. IV, paras. 77.d.(3)(b)(iii), 78.d., 83.d. (2019 ed.).

[9] *But cf. Ball v. United States*, 470 U.S. 856, 865 (1985) ("The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.").

to the Judge Advocate General of the Army for remand to
the United States Army Court of Criminal Appeals to
complete its review under Article 66, UCMJ, 10 U.S.C.
§ 866 (2018 & Supp. V 2019-2024).

Judge HARDY, dissenting.

For many years, the military justice system was less than diligent about maintaining the distinction between the legal concepts of forfeiture and waiver. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (noting the failure of military courts to consistently distinguish between waiver and forfeiture). More recently, however, this Court has generally preserved the distinction, reinforcing that waiver arises from the "intentional relinquishment or abandonment of a known right" while forfeiture occurs when a party "fail[s] to make the timely assertion of a right." *United States v. Cook*, 86 M.J. 104, 108 (C.A.A.F. 2025) (internal quotation marks omitted) (quoting *Gladue*, 67 M.J. at 313); *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (same); *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (same). Because the Court's decision in this case undermines our more recent efforts and blurs the line between forfeiture and waiver, I respectfully dissent.[1]

### I. "[T]he defense has no motions."

As accurately described by the majority, the following exchange occurred during Appellee's arraignment:

> [Military Judge]: [Appellee], how do you plead? Before receiving your plea, I advise you that any motions to dismiss or to grant other appropriate relief should be made at this time. Your defense counsel will speak for you.
>
> [Defense Counsel]: Your Honor, *the defense has no motions.*

(Emphasis added.) On its face, defense counsel's statement indicated nothing more than that Appellee had no motions to make at that time. Appellee's failure to move to dismiss some of the charges as multiplicitous would seem to fall squarely within the definition of forfeiture set forth in the Rules for Courts-Martial (R.C.M.). Pursuant to R.C.M. 905(e)(1), the "[f]ailure by a party to raise defenses or objections or to make motions or requests which must be

---

[1] I agree with the majority that defense counsel can waive a multiplicity claim on his client's behalf.

made before pleas are entered . . . *forfeits* the defenses or objections absent an affirmative waiver." (Emphasis added.)

To find affirmative waiver instead of forfeiture, the majority construes defense counsel's simple five-word statement as: (1) acknowledging that Appellee had a colorable multiplicity claim that he had the right to pursue; and (2) expressing a deliberate and intentional decision by Appellee to relinquish his right to pursue that claim. *United States v. Malone*, __ M.J. __, __ (11-14) (C.A.A.F. 2025). As the majority correctly points out, this Court has previously embarked on similar efforts to infer affirmative waiver from simple statements by defense counsel in other contexts. *Id.* at __ (13-14). But those cases do not control the specific facts presented in this case, and for the reasons explained below, I see no reason to extend their reasoning to the new circumstance presented here, especially in light of this Court's presumption against finding waiver when constitutional rights are at issue. *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020).

### A. Ineffective Assistance of Counsel

At the Government's invitation, the majority grounds its waiver analysis on the fact that Appellee chose not to file an ineffective assistance of counsel (IAC) claim against the attorney who represented him at trial. *Malone*, __ M.J. at __ (10-13). I disagree that an appellant's decision to raise or not raise an IAC claim on appeal should be granted such legal significance. An appellant's decision not to bring an IAC claim on appeal—a decision made long after the court-martial has concluded—cannot retroactively transform a forfeiture into an affirmative waiver.

I acknowledge that this Court has previously cited an appellant's failure to file an IAC claim as a relevant factor when finding waiver. For example, in *United States v. Campos*, 67 M.J. 330, 333 & n.4 (C.A.A.F. 2009), the Court noted that the appellant did not file an IAC claim in a case where the evidence in the record left no uncertainty as to whether the defense counsel's statement of "no objection" was an intentional relinquishment of a known right. But the majority stretches that reasoning significantly farther,

making this Court's speculative presumptions about what a competent attorney *would have* known and *would have* done the cornerstone of its waiver analysis.

In my view, the majority's analysis reads too much into Appellee's decision not to bring an IAC claim. To succeed on such a claim, an appellant must establish that his attorney's performance was deficient—i.e., that the attorney "made errors *so serious* that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (emphasis added). An attorney's performance will not be deemed deficient unless the attorney's "acts or omissions were outside the *wide range* of professionally competent assistance." *Id.* (emphasis added). The essential question is whether the attorney's "representation fell below an objective standard of reasonableness." *Id.* at 688.

Nothing in this standard suggests that competent, non-deficient counsel must perform perfectly, or that every mistake or omission made by defense counsel establishes grounds for an IAC claim. To the contrary, a defense counsel's performance will not be deficient unless he makes errors "so serious" that his performance offends the Sixth Amendment. *Id.* at 687. Thus, the Supreme Court recognizes that lesser errors by defense counsel—those not "so serious" that they violate the Constitution—are simply mistakes that do not establish grounds for filing an IAC claim. The possibility of such mistakes is exactly why plain error review exists for forfeited issues.

The majority's approach does not seem to acknowledge the possibility of these lesser errors and—if taken to its logical conclusion—would turn *every* instance of remediable forfeiture into an intentional waiver unless an appellant files an IAC claim against his trial defense counsel. When a defendant forfeits an issue at trial, this Court reviews the issue for plain error. *United States v. Batres*, __ M.J. __, __ (5) (C.A.A.F. 2025) (citing *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017)). Under plain error review, this Court can only provide relief if the alleged error was plain or obvious. *Id.* (citing *Davis*, 76 M.J. at 229). But by the majority's reasoning, unless the

appellant files an IAC claim, the Court must assume: (1) that defense counsel would have recognized any plain or obvious issue, and (2) that the appellant must have made a knowing and intentional decision not to raise the issue at trial. Under this approach, plain and obvious forfeited issues become intentional waivers by default. This suggests that the only way for an appellant to obtain relief from a forfeited issue—including an attorney's mistakes that fall short of offending the Constitution—is to simultaneously bring an IAC claim, to rebut the presumption that defense counsel knowingly relinquished the appellant's right to raise the issue at trial.

Of course, I agree with the majority that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. However, competent, non-deficient counsel are still capable of making errors or omissions that qualify as non-waived forfeitures. Accordingly, Appellee's decision not to bring an IAC claim in this case should not control our waiver analysis.

## B. Forfeiture or Waiver

On its face, defense counsel's simple statement that "the defense has no motions" does not establish an affirmative waiver of Appellee's multiplicity claim. As noted by the United States Army Court of Criminal Appeals (ACCA) below, there was no mention of multiplicity during either the pretrial proceedings or the providence inquiry, nor any discussion of it in the plea agreement or the stipulation of fact. *United States v. Malone*, 85 M.J. 573, 579-80 (A. Ct. Crim. App. 2025). The issue simply went unaddressed by the Government, Appellee, and the military judge.

In tacit recognition that the plain language of defense counsel's statement did not expressly establish affirmative waiver, the Government argues that defense counsel's statement must be "[v]iewed in context" and urges this Court to apply "[t]he logic of an implicit waiver" to this case. The majority obliges the Government, taking several pages to carefully explain how the words "the defense has

4

no motions" can be construed to indicate that: (1) Appellee and his counsel knew they had a right to seek dismissal of some of the domestic violence specifications on multiplicity grounds; and (2) Appellee intentionally relinquished his known right to pursue a multiplicity claim in this case. *Malone*, __ M.J. at __ (11-14). To be clear, I do not fault the majority's reasoning. I agree that the Court can—with significant effort—infer waiver from defense counsel's statement. I just don't believe that we should. I think the better practice would be to require an accused to more explicitly concede the point so that it would be clear on the record that there was an *intentional* relinquishment or abandonment of a known right.

In this case, the Government created the multiplicity issue by drafting specifications that, in the words of the majority, had an "undeniably obvious" multiplicity problem. *Malone*, __ M.J. at __ (11). Neither the Government, nor Appellee, nor the military judge addressed the issue at any time during the court-martial proceedings. In a case where the Government failed to negotiate a "waive all waivable motions" provision in the plea agreement, I see no reason why Appellee's simple statement that "the defense has no motions" should be considered as anything more than forfeiture.

### C. Plain Error

Because I believe that Appellee only forfeited the multiplicity issue, I would analyze Issue II under a plain error standard of review. *See Batres*, __ M.J. at __ (5). To prevail on plain error review, an appellant must show that there was error, that the error was plain or obvious, and that the error was materially prejudicial to the appellant. *Id.* As the majority states, the issue of multiplicity was "undeniably obvious on the face of the charge sheet, in the stipulation of fact, and during the providence inquiry." *Malone*, __ M.J. at __ (11). And as the majority further explains, the Supreme Court has held that the adverse collateral consequences of multiplicious convictions "may not be ignored," a holding that cuts in favor of finding prejudicial error even where, as here, Appellee's sentences were to run concurrently accordingly to the plea agreement. *Id.* at __ (14 n.9) (internal quotation marks

omitted) (quoting *Ball v. United States*, 470 U.S. 856, 865 (1985)). Thus, having found that this issue was forfeited rather than waived, I would find plain error and affirm the ACCA's decision merging Specifications 1, 3, and 4 of Charge I into a consolidated Specification 4, and then dismissing Specifications 1 and 3 of Charge I, and affirm the sentence.

## II. Conclusion

In this guilty plea case, the Government drafted multiplicious specifications and then failed to negotiate a "waive all waivable motions" provision in the plea agreement. Nevertheless, the Government asks this Court to apply the doctrine of implicit waiver to extinguish the ability of any appellate court to review the issue. I would decline the Government's invitation and simply apply the President's guidance in R.C.M. 905(e)(1) to Appellee's case, identifying a failure to file a multiplicity motion, finding a forfeiture, and analyzing the issue on appeal for plain error. For that reason, I respectfully dissent.